## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA SHUMAN,** a minor by and through his mother and natural guardian **TERESA SHERTZER, and TERESA SHERTZER,** individually | : : : : : | **CIVIL ACTION NO. 02-CV-3594** |
| **Plaintiffs** | : : | |
| **v.** | : : | **(GARDNER)** |
| **PENN MANOR SCHOOL DISTRICT, PENN MANOR SCHOOL BOARD, GARY B. CAMPBELL,** individually and as Superintendent of the Penn Manor School District, **AND DONALD STEWART,** individually and as Acting Superintendent of the Penn Manor School District **AND JANICE M. MINDISH,** individually and as Principal of Penn Manor High School, **AND BRIAN D. BADDICK,** individually and as Assistant Principal of Penn Manor High School, **AND PHILIP B. GALE,** individually and as Dean of Students of Penn Manor High School, **AND CAROLE FAY,** individually and as a teacher and Agriculture Coordinator at Penn Manor High School | : : : : : : : : : : : : : : : : : : : : : : : : | |
| **Defendants** | : | |

## DEFENDANTS, PENN MANOR SCHOOL DISTRICT, PENN MANOR SCHOOL BOARD, GARY B. CAMPBELL, DONALD STEWART, JANICE M. MINDISH, BRIAN D. BADDICK, PHILIP GALE, AND CAROLE FAY'S
## BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The Defendants, Penn Manor School District (hereinafter referred to as the "District"),

Penn Manor School Board (hereinafter referred to as the "Board"), Gary B. Campbell, former

Superintendent of the Penn Manor School District, Donald Stewart, Superintendent of the Penn

Manor School District, Janice M. Mindish, Principal of Penn Manor High School, Brian D.

Baddick, Assistant Principal of Penn Manor High School, Philip Gale, Assistant Principal of Penn Manor High School, and Carole Fay, teacher and Agriculture Coordinator at Penn Manor High School,[1] present the following Brief in support of their Motion for Summary Judgment on all remaining claims contained in Plaintiffs' Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure:

## I.    <u>Factual Background</u>

Plaintiffs' allegations arise from an incident that occurred on December 7, 2001 between the minor Plaintiff, Joshua Shuman, and another student, Olivia Becker.  (See, Plaintiffs' Complaint, attached as Exhibit "A", paragraphs 14-16; see also, deposition transcript of Plaintiff, Joshua Shuman, attached as Exhibit "B", pages 47-62).  Ms. Becker reported to her guidance counsel, Michael Wildasin, that Joshua Shuman engaged in inappropriate sexual contact against her will during second and third block classes on December 7.  (See, deposition transcript of Olivia Becker, attached as Exhibit "C", page 46, lines 13-25).  Assistant High School Principal, Philip Gale, investigated the allegations.  (See, deposition transcript of Philip Gale, attached as Exhibit "D", pages 49-55).  Five or six students were interviewed, including Joshua Shuman and Olivia Becker.  (Ex. D, page 52, page 63)  Joshua Shuman admitted to the inappropriate contact, but contended that it was consensual.  (Ex. B, page 59, page 99, lines 9-14, page 141, lines 15-19; Ex. l, page 57).  Mr. Shuman was advised of the charges Ms. Becker levied against him and he was offered an opportunity to respond to the charges.  (Ex. B, pages 81-83, page112, lines 12-20; Ex. D, pages 56-57).  Subsequently, Mr. Shuman was suspended from school for 4 days, from December 11, 2001 through December 14, 2001.  (Ex. A, paragraph 24; Ex. B, pages 96,

---

[1]    C. Willis Herr, Richard L. Frerichs, Jeffrey E. Lyon, Patrick T. Kline, Donald H. Anderson, H. Thomas Herr, Kelly K. Withum, Donna Wert, Jeffrey G. Kreider, Dolores Warfel, and Steve Skrocki, were each individually named defendants in Plaintiffs' Complaint.  By Stipulation of the parties dated November 3, 2003 and Court Order dated November 6, 2003, each of these defendants were voluntarily dismissed from this case.

100).  Mr. Shuman returned to school on Monday, December 17, 2001.  (Ex. A, Paragraph 44).

He alleges that once he returned to school he was teased and harassed by fellow students.  (Ex.

A, paragraph 44; Ex. B, pages 162-165).  At the end of tenth grade, on June 28, 2002, Mr.

Shuman withdrew from school and enrolled with the 21st Century Cyber School in Exton,

Pennsylvania.  (Ex. A, paragraph 46; Ex. B, pages 156-157).  He attended the 21st Century

Cyber School for his eleventh grade school year.  (Id.).  At the start of the current school year,

the 2003-04 school year, he re-enrolled in the District for twelfth grade.  (Ex. B, page 157).

## II.   **Procedural History**

On June 5, 2002, Plaintiffs, Joshua Shuman, and his mother, Teresa Shertzer, filed this

Federal Complaint against the District, the Board, C. Willis Herr, Richard L. Frerichs, Jeffrey E.

Lyon, Patrick T. Kline, Donald H. Anderson, H. Thomas Herr, Kelly K. Withum, Donna Wert,

Jeffrey G. Kreider, Dolores Warfel, and Steve Skrocki, each individually and as

members/officers of the Penn Manor School Board, Gary B. Campbell, individually, and as

Superintendent of the Penn Manor School District, Donald Stewart, individually and as Acting

Superintendent of the Penn Manor School District, Janice M. Mindish, individually and as

Principal of Penn Manor High School, Brian D. Baddick, individually and as Assistant Principal

of Penn Manor High School, Philip Gale, individually and as Dean of Students of Penn Manor

High School, and Carole Fay, individually and as a teacher and Agriculture Coordinator at Penn

Manor High School.  (Ex. A; Docket Entry No. 1).  The Plaintiffs assert the following claims

against the Defendants:

    (1)    Invalidity of Policy Manual and Defendants' Actions Thereto (Count I);
    (2)    Violation of Civil Rights (42 U.S.C. § 1983) (Count II);
    (3)    Violation of Plaintiffs' Substantive Due Process Rights (Count III);
    (4)    Violation of Plaintiffs' Procedural Due Process Rights (Count IV);
    (5)    Violation of Plaintiffs' Fourth Amendment Rights (Count V);
    (6)    Violation of Plaintiffs' Right to Equal Protection of the Law (Count VI);
    (7)    Violation of Plaintiffs' First Amendment Rights (Count VII);

(8)  Intentional Infliction of Emotional Distress (Count VIII);
(9)  Negligence (Count IX);
(10)  Negligent Infliction of Emotional Distress (Count X); and
(11)  Punitive Damages (Count XI).

(Ex. A).

On August 5, 2002, the Defendants filed a Motion to Dismiss several of the claims asserted in the Complaint.  (Docket Entry No. 8).  The Court entered an Order on June 27, 2003, granting in part, and denying in part, the Defendants' Motion to Dismiss.  (Docket Entry No. 19).

All of the individually identified board members, C. Willis Herr, Richard L. Frerichs, Jeffrey E. Lyon, Patrick T. Kline, Donald H. Anderson, H. Thomas Herr, Kelly K. Withum, Donna Wert, Jeffrey G. Kreider, Dolores Warfel, and Steve Skrocki, were dismissed by Stipulation of the parties dated November 4, 2003 and Court Order dated November 6, 2003. (Docket Entry No. 31).

The Defendants move for dismissal of Plaintiffs' remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**III.  Argument**

**A.  Standard of Review**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248. 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the

factual dispute is not a genuine one.  See id. at 248.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  Id.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: 1) there is no genuine issue of material fact; and 2) she is entitled to judgment as a matter of law.  See CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d Ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  See also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  There is no requirement that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.  See Celotex, 477 U.S. at 322.  In such a situation, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  See Anderson, 477 U.S. at 256-57. The court need not accept mere conclusory allegations or denials taken from the pleadings.  See Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  In deciding a motion for summary judgment, "the judge's function is not himself to

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 447 U.S. at 249.

### B.    Claims Brought Under 42 U.S.C. § 1983

In Counts I and II of their Complaint, Plaintiffs assert violations of their First, Fourth and Fourteenth Amendment rights for which they seek relief under the Civil Rights Act, 42 U.S.C. § 1983  ("Section 1983") (Ex. A, Counts I and II).[2]  To maintain a cause of action under Section 1983,[3] a plaintiff must be able to show (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (citations omitted).[4]

"In reviewing an alleged constitutional deprivation in the public school context … it should be noted that students, as unemancipated minors, do not possess all of the rights of an adult, nor do they possess such rights to the same extent as an adult, when such rights do apply." Picarella v. Terrizzi, 893 F.Supp. 1292, 1297 (M.D.Pa., 1995), citing Vernonia School District 47J v. Acton, 515 U.S. 646, ----, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564 (1995).

In addition to the diminution of rights and interests on the part of students to which the Supreme Court referred in Vernonia, the Third Circuit has explained that the rights for which a

---

[2]    By Court Order dated June 24, 2003, the First Amendment claim in Count I was dismissed and all claims in Counts I and II asserted against Carole Fay in her individual capacity were dismissed.  (Docket Entry No. 19).  Further, to the extent Plaintiffs' assert a Substantive Due Process claim in Counts I or II, it was also dismissed by the June 24, 2003 Order.

[3]    Section 1983 of title 42 U.S.C., in pertinent part, reads:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

[4]    Defendants do not dispute that they were acting under color of state law.

student may recover under Section 1983 should be those that are clearly set forth in the Constitution or at least well-recognized.  That is, Section 1983 is not intended to be a vehicle for interference by federal courts in the operation of public schools, a traditional area of state and local concern.  Zeller v. Donegal School District Board of Education, 517 F.2d 600 (3d Cir. 1975).  See also Moreland v. Western Pennsylvania Interscholastic Athletic League, 572 F.2d 121 (3d Cir. 1978).  In deciding a Section 1983 case, the Court should not act as a super school board to second guess the defendants.  Sims v. Board of Ed. of Independent School Dist. No. 22, 329 F.Supp. 678, 690 (D.C. N.M. 1971).  "If acts violative of reasonable school regulations be not discouraged and punished, those acts can result in the disruption of the schools themselves." Id.  "If our educational institutions are not allowed to rule themselves, within reasonable bounds, as here, experience has demonstrated that others will rule them to their destruction."  Id.

### 1.    First Amendment

Plaintiffs aver a First Amendment claim in Counts II and VII of the Complaint. Plaintiffs assert that "there was no informal hearing" and Plaintiffs "were not permitted to question anyone."  (Ex. A, ¶¶ 90, 91).  In their Rule 16 Conference Memorandum, presented at the outset of this litigation, Plaintiffs define their First Amendment claim as "interference of (sic) Plaintiffs' right to access to the courts."  (See, Plaintiffs' Rule 16 Conference Memorandum, attached as Ex. I, page 3).

The Defendants moved to dismiss Plaintiffs' First Amendment claim that was contained in Count I of the Complaint.  (Docket Entry No. 8).  The motion was granted and the First Amendment Claim in Count I was dismissed.  (Docket Entry No. 19).  The Defendants, however, did not include that First Amendment claims in Counts II and VII in their Motion to Dismiss. The Defendants respectfully submit that the Court's reasoning in dismissing the First Amendment Claim in Count I also applies to the First Amendment Claims in Counts II and VII.

In ruling upon the Motion to Dismiss Plaintiffs' First Amendment claim in Count I of the Complaint, the Court noted, "[P]laintiffs allege a violation of the First Amendment because defendants failed to provide a process to challenge decisions by the principal to discipline students.  Plaintiffs' claims in that regard are no more than due process claims.  Moreover, plaintiffs' bald statement that its First Amendment claims are based [on] defendants' interference with their right to access the courts is belied by the fact that the plaintiffs obviously accessed this Court."  (See, Transcript of Hearing on Defendants' Motion to Dismiss, attached as Ex. J, pages 20-21).

In Counts II and VII of their Complaint, Plaintiffs' First Amendment claim remains failure to provide "information regarding the investigation of Ms. Becker's complaint, as well as what she claimed Joshua did to her" and "there was no informal hearing" and Plaintiffs "were not permitted to question anyone."  (Ex. A, ¶¶ 90. 91).  As the Court noted, these claims are procedural due process claims.  (Ex. J, page 20, lines 24-25).[5]  Moreover, Plaintiffs' characterization of their First Amendment claim as a claim that Defendants have interfered with their right of access to the Court "is belied by the fact that the plaintiffs have obviously accessed this Court."  (Ex. J, page 21, lines 1-4).  The Defendants respectfully submit that Plaintiffs have failed to state a viable First Amendment claim and the First Amendment Claims in Counts II and VII should be dismissed.

---

[5]      Plaintiffs' procedural due process claims are addressed in Section B-3, below.

### a.    Qualified Immunity

Even if Plaintiffs have a viable First Amendment claim, the individually named Defendants, Gary B. Campbell, Donald Stewart, Janice Mindish, Brian D. Baddick, and Philip B. Gale are entitled to qualified immunity. [6]

The required approach to qualified immunity is to examine the record to determine whether Plaintiffs have supported a constitutional violation before proceeding to determine if qualified immunity will insulate the individual Defendants' conduct from further judicial scrutiny.  Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000); Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999), citing Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) and Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 86 (3d Cir. 1998), cert. denied 25 U.S. 1144, 119 S.Ct. 1037, 143 L.Ed.2d 45 (1999) ("[W]hen a qualified immunity defense is raised a court first should determine whether the plaintiff has asserted a violation of a constitutional right at all").  As set forth above, the Defendants contend that Plaintiffs' First Amendment claim lacks merit, and therefore, discussion of qualified immunity is unnecessary.   Nevertheless, assuming *arguendo* that Defendants' conduct might be viewed as supporting a claim for a First Amendment violation, the Defendants suggest that they are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

---

[6]    The application of qualified immunity to protect the individual defendants from potential liability is "a pure question of law."  McLaughlin v. Watson, 271 F.3d 566, 570 (3d Cir. 2001), citing Acierno v. Cloutier, 40 F.3d 597, 609 (3d Cir.1994) (citing Burns v. County of Cambria, 971 F.2d 1015, 1020 (3d Cir.1992)).

457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order to defeat an assertion of qualified immunity, a plaintiff must allege that the official violated a "clearly established" right. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). A plaintiff does not fulfill this requirement simply by alleging the defendant violated some constitutional provision. Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." Anderson, 483 U.S. at 640. "[C]learly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. McLaughlin, 271 F.3d at 570 -571. "A plaintiff need not show that the very action in question has previously been held unlawful, but needs to show that in light of preexisting law the unlawfulness was apparent." Id., citing Shea v. Smith, 966 F.2d 127, 130 (3d Cir.1992) (citations omitted).

The essential inquiry is whether a reasonable official in the defendant's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." Id., quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 797 (3d Cir.2000) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir.1989), cert. denied, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990)).

Even if a right is clearly established however, officials will not be held liable if they were "acting reasonably in good faith fulfillment of their responsibilities." Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied 475 U.S. 1096, 106 S.Ct. 1494 (1986). Qualified immunity must be such that public school officials understand that action taken within the bounds of reason under all circumstances will not be punished. Wood v. Strickland, 420 U.S. 308, 321 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); Anderson, 483 U.S. at 641. Moreover, qualified immunity applies even if an official is mistaken, so long as the acts at issue are reasonable. Anderson, 483 U.S. at 641. As the Supreme Court has explained, "qualified immunity" affords

"protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The rule supports "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." In Re City of Philadelphia Litig., 49 F.3d 945, 960 (3d Cir.1995), cert. denied 516 U.S. 863, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995), quoting Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982) (citations omitted).

"[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson, 483 U.S. at 638. "One of the purposes of [qualified] immunity ... is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Siegert v. Gilley, 500 U.S. 226, 237, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Doctrinally speaking, qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). See also, Siegert, 500 U.S. at 226, 111 S.Ct. at 1794.

### 1)    Gary Campbell

Plaintiffs' claims against Gary Campbell should be dismissed because Gary Campbell was not involved in this case and he is entitled to qualified immunity.

First, Section 1983 liability for an individual government employee requires personal involvement in the alleged constitutional deprivation. See Colburn v. Upper Darby Tp., 838 F.2d 663, 673 (3d Cir. 1988) (dismissing claims against individual government employees where plaintiffs fail to allege personal involvement). By Plaintiffs own admission, the District's former

Superintendent, Gary Campbell, had no involvement in this case. Plaintiff, Joshua Shuman was asked, "Why have you sued Gary Campbell, do you know?" Mr. Shuman responded, "I don't know, personally." (Ex. B, page 194, lines 14-17). Plaintiff, Teresa Shertzer, testified that she chose to sue Gary Campbell because he "was the superintendent at the time of the incident" and he allegedly failed to respond to a January 2002 letter from Plaintiffs' counsel. (See, Teresa Shertzer Deposition Transcript, attached as Ex. H, pages 116-117). The January 2002 letter was sent long after Dr. Campbell had left that District and Donald Stewart had taken over as Acting Superintendent. (Ex. H, p. 117). Donald Stewart testified that the letter was forwarded to the District solicitor. (See, Donald Stewart Deposition Transcript, attached as Ex. G, pages 125-134). Mr. Stewart testified that at the time of the incident, December 7, 2001, Dr. Gary Campbell was hospitalized and had been on medical leave since October or November 2001. (See, Donald Stewart Deposition Transcript, attached as Ex. G, pages 14-16). Because he was not personally involved in this case, it is respectfully submitted that the Plaintiffs' claims against Dr. Campbell are unwarranted.

Furthermore, Dr. Campbell is entitled to qualified immunity. Dr. Campbell's conduct cannot fairly be described as violating a "clearly established" First Amendment right and a reasonable official in Dr. Campbell's position could not believe that his conduct violated any clearly established constitutional right. The First Amendment claims asserted against Gary Campbell should be dismissed.

### 2)    Donald Stewart

Plaintiffs' claims against Donald Stewart should be dismissed because he also was not involved in this case and he is entitled to qualified immunity.

First, Section 1983 liability for an individual government employee requires personal involvement in the alleged constitutional deprivation. See Colburn, 838 F.2d at 673. Plaintiff,

Teresa Shertzer, could identify no reason why Donald Stewart had been named as an individual defendant in this case. She simply deferred to her attorney, testifying "I believe you should ask my Counsel that question." (Ex. H, pages 118-120). Again, she was asked, "[Y]our answer with respect to Donald Stewart is that you're going to defer to your counsel?" She responded, "Correct." (Ex. H, page 120, lines 20-24).

Plaintiff, Joshua Shuman, was asked, "Why did you sue Donald Stewart?" He responded, "Because he should have been notified when I sent in my copy of my letter for being wrongfully accused." (Ex. B, page 197, lines 15-19). He was then asked, "Anything else?" He responded, "No, that would be it." (Ex. B, page 197, lines 22-23).

Donald Stewart testified that he was not involved in the discipline of Joshua Shuman, but was simply placed on notice of the suspension. (See, Deposition Transcript of Donald Stewart, attached as Ex. G, pages 91-93).

Consistent with the Third Circuit's decision in <u>Colburn</u>, the claims against Donald Stewart should be dismissed due to the lack of any personal involvement in the alleged constitutional deprivation. It is respectfully requested that the Plaintiffs' First Amendment claims against Donald Stewart are also unwarranted.

Furthermore, Donald Stewart is also entitled to qualified immunity from liability for Plaintiffs' First Amendment claim. None of his conduct can fairly be described as violating a "clearly established" First Amendment right and a reasonable official in Mr. Stewart's position could not believe that his conduct violated any clearly established constitutional right. Donald Stewart should be granted qualified immunity.

### 3)    Janice Mindish

Plaintiffs' claims against Janice Mindish should be dismissed because she was not involved in this case and she is entitled to qualified immunity.

First, Section 1983 liability for an individual government employee requires personal involvement in the alleged constitutional deprivation.  See Colburn, 838 F.2d at 673.  Janice Mindish is the High School Principal.  (Ex. A, ¶ 9).  She testified that she was aware that the investigation was going on, but she was not involved.  (See, Deposition Transcript of Janice Mindish, attached as Ex. E, pages 107-122).  Primarily Mr. Gale handled the investigation.  (Ex. E, page 115, lines 18-23).  After the investigation was complete, she was consulted concerning the length of the suspension.  (Ex. E, page 122).  Joshua Shuman testified that Dr. Mindish has been sued individually, because "[s]he was in charge of this."  (Ex. B, page 197, lines 8-14).  Ms. Shertzer testified, "She did not act in my son's best interest and she's the administrator here.  She did not hear me when I asked for documentation.  She cut me off, she treated me like I was one of the students, in my opinion.  And she got in my face."  (Ex. H, page 121, lines 110).  Because of her lack of personal involvement in the alleged constitutional deprivation, it is respectfully requested that the First Amendment claim asserted against Dr. Mindish be dismissed.

Furthermore, the conduct attributed to Dr. Mindish cannot fairly be described as violating a "clearly established" First Amendment right and a reasonable official in Dr. Mindish's position could not believe that her conduct violated any clearly established constitutional right.  Janice Mindish should be granted qualified immunity.

### 4)    Brian Baddick

Plaintiffs' claims against Brian Baddick should be dismissed because he was not involved in any alleged constitutional deprivation and he is entitled to qualified immunity.

First, Section 1983 liability for an individual government employee requires personal involvement in the alleged constitutional deprivation.  See Colburn, 838 F.2d at 673.  Brian Baddick is an Assistant Principal at the High School.  (Ex. A, ¶ 10).  Joshua Shuman testified that Brian Baddick was involved in a limited part of his interview.  (Ex. B, page 93, lines 8-17).

Mr. Shuman testified that Mr. Baddick asked him, "[S]o did you feel her to get a rise?" (Ex. B, page 93, lines 13-14). Mr. Shuman was offended by this question. (Ex. B, pages 140-141). Mr. Shuman was asked, "Why did you sue Brian Baddick?" He responded, "Because he was also there and he made a shrewd comment." (Ex. B, page 197, lines 3-7). He testified that there was no other reason for suing Mr. Baddick. (Ex. B, page 197, lines 6-7).

Ms. Shertzer testified that Brian Baddick "verbally abused my son, in my opinion. He attempted to intimidate him to change his story. My son had already told his story more than once. And I believe that his conduct towards my son was inappropriate conduct for a professional." (Ex. H, page 121, lines 11-21). She testified that there were no other reasons for suing Mr. Baddick. (Id.). Because Mr. Baddick had no personal involvement in any purported First Amendment deprivation, the First Amendment claim asserted against him should be dismissed.

Furthermore, Mr. Baddick is entitled to qualified immunity. The conduct attributed to Mr. Baddick cannot fairly be described as violating a "clearly established" First Amendment right and a reasonable official in Mr. Baddick's position could not believe that his conduct violated any such clearly established constitutional right. Brian Baddick should be granted qualified immunity.

### 5)    Philip Gale

Philip Gale is also an Assistant Principal at the High School. (Ex. A, ¶ 11). Mr. Gale was in charge of the investigation and he made the judgment on discipline for Mr. Shuman. (Ex. D, pages 49-71 (detailing the investigation and conclusion on discipline)). Joshua Shuman testified that the only reason he sued Mr. Gale was, "Because he was in charge of my discipline." (Ex. B, page 196, lines 23-25, page 197, lines 1-2). Ms. Shertzer testified that "Mr. Gale did not respond to the request of documentation for his decision in my son's suspension. Mr. Gale

suspended my son without proof of an incident.  Mr. Gale detained my son for an unreasonable amount of time, without no (sic) availability to phone home.  And I don't feel that Mr. Gale really treated my son with respect for detaining him for that amount of time."  (Ex. H, page 121, lines 23-25, page 122, lines 1-11).

The conduct attributed to Mr. Gale cannot fairly be described as violating a "clearly established" First Amendment right and a reasonable official in Mr. Gale's position could not believe that his conduct violated any clearly established constitutional right.  Mr. Gale should be granted qualified immunity from liability for any First Amendment claims.

### b.    The District and Board are Entitled to Municipal Immunity

Furthermore, assuming Plaintiffs have a viable First Amendment claim, the District and Board[7] are entitled to "Municipal Immunity."   Municipal and governmental liability under Section 1983 results only when the execution of a "government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Olender v. Township of Bensalem, 32, F.Supp.2d 775 (E.D. Pa. 1999), aff'd, 202 F.3d 254 (3d Cir. 1999).

A plaintiff has the burden of establishing the existence of a governmental policy, practice or custom and the plaintiff must show an "affirmative link" between the occurrence of the alleged misconduct and the municipality's policy or custom.  See Rizzo v. Goode, 423 U.S. 362,

---

[7]    Plaintiffs assert claims against both the District and the "Penn Manor School Board."   In Glickstein v. Neshaminy School District, No. Civ. A. 96-6236, 1997 W.L. 660636, *3 (E.D. Pa., Oct. 22, 1997), the court interpreted the Pennsylvania Rules of Civil Procedure 76 and 2102(b) and concluded that school boards are not amenable to suit under Pennsylvania law.  Accordingly, Plaintiffs' claims against the Penn Manor School Board must be dismissed.  See also, Satterfield v. Borough of Schuylkill Haven , 12 F.Supp.2d 423, 431 (E.D. Pa. 1998) (Borough Council dismissed as a redundant party in Section 1983 action.).

371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). There is no identified official municipal policy, practice or custom relating to the purported First Amendment violations.

In <u>Monell</u>, 436 U.S. at 690, the United States Supreme Court held:

> Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

A court must first inquire whether the "execution of a government's power or custom, ... made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." <u>Id</u> at 694. The court must then inquire "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The policy must be the "moving force" behind the constitutional violation. <u>Cornfield v. Consolidated High Sch. Dist. No. 230</u>, 991 F.2d 1316 (7th Cir. 1993), <u>citing</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion).

In <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Supreme Court held that an unconstitutional policy may be inferred by a single act by an official responsible for setting policy. <u>Id</u>., <u>citing</u> <u>Owen v. City of Independence</u>, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); <u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). However, whether a particular official has "final policymaking authority" is a question of state law [and] the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." <u>Id</u>., <u>citing</u> <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 482-83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A subordinate's actions may result in municipal liability only if that

subordinate "has been delegated final authority in a limited area." <u>Cornfield</u>, 991 F.2d at 1325, <u>citing</u> <u>Pembaur</u>, 475 U.S. at 483. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." <u>Praprotnik</u>, 485 U.S. at 127.

The Board of School Directors in the instant matter has full power to manage the schools and adopt all rules needed for that broad purpose. 24 P.S. § 5-510. There is no identified Board policy, practice or custom with respect to the First Amendment claims in the Plaintiffs' Complaint. There is no evidence to support the conclusion that the Board delegated final policymaking authority to any of the Defendants or that the Board of School Directors endorsed any purported First Amendment violations. Accordingly, there can be no municipal liability on the Plaintiffs' First Amendment claim.

### 2.    Fourth Amendment

Plaintiffs have set forth a purported claim for violation of the Fourth Amendment right to be free of unreasonable seizures. (Ex. A, paragraphs 59-61).[8] The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures. U.S. Const. Amend. IV. These protections extend to students in public schools. <u>Vernonia</u>, 515 U.S. at 655; <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 336-337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); <u>Gottlieb v. Laurel Highlands School District</u>, 272 F.3d 168 (3d Cir. 2001).

In criminal *search* case, the touchstone of reasonableness is "probable cause." <u>T.L.O.</u>, 469 U.S. at 341. However, in a public school, students have a reduced expectation of privacy when compared with the public at large, and "[i]n the school context 'the legality of a search … depend[s] simply on the reasonableness under all the circumstances of the search.'" <u>Rinker v. Sipler</u>, 264 F.Supp.2d 181 (M.D. Pa. 2003), <u>quoting</u> <u>T.L.O.</u>, 469 U.S. at 334. Thus, the standard

for determining the reasonableness of a search in the school context is reduced from the standard applied in the criminal context.

This case, however, involves a *seizure*.  There is no Third Circuit or U.S. Supreme Court case annunciating the standard to be applied to determine the reasonableness of a seizure in a school context.  See <u>Valentino C. v. S.D. of Philadelphia, et al.</u> 2003 WL 177210 *4 (E.D.Pa., Jan. 23, 2003) (noting the lack of Third Circuit precedent and applying the "reasonableness" standard set forth in <u>T.L.O.</u> to a public school seizure claim).[9]  In the criminal context, a reasonableness standard is applied to police investigatory seizures.  See <u>Terry v. Ohio</u>, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  Logically, therefore, a reduced standard should be applied in schools.  In <u>In re Randy G.</u> 26 Cal.4th 556, 568-569, 28 P.3d 239 (2001), the California Supreme Court thoroughly analyzed Federal precedent and concluded that only if a seizure was arbitrary, capricious or for the purpose of harassment would it violate the Fourth Amendment.  The <u>Randy G.</u> Court wrote,

> Neither this court nor the Supreme Court has deemed stopping a student on school grounds during school hours, calling a student into the corridor to discuss a school-related matter, or summoning a student to the principal's office for such purposes to be a detention within the meaning of the Fourth Amendment.  For the reasons stated above, we would be hesitant to term such conduct a "detention" here.  However, we find it unnecessary to decide whether school officials' infringement on the residuum of liberty retained by the student is properly analyzed as a detention under the Fourth Amendment or as a deprivation of substantive due process under the Fourteenth Amendment, for (as we explain below) we discover that the test under either clause is substantially the same--namely, whether the school officials' conduct was arbitrary, capricious, or undertaken for purposes of harassment.

<u>In Re Randy G.</u>, 26 Cal.4th at 565, 28 P.3d at 244-245.

---

[8]    A Fourth Amendment "seizure" claim also appears in Count V of the Complaint.

Whether the standard to be applied in determining whether an investigatory seizure in a public school is constitutionally permissible is the "reasonableness" standard set forth in T.L.O. or "arbitrary, capricious, or for the purpose of harassment" as set forth in In re Randy G., Joshua Shuman's Fourth Amendment rights were not violated.

At approximately 10:00 a.m., on Monday, December 10, 2001, Olivia Becker reported to Assistant Principal, Philip Gale, that she had been the victim of inappropriate sexual contact, against her will on Friday, December 7, 2001. (Ex. D, pages 49, 54, lines 13-16). Ms. Becker testified that Joshua Shuman put his hand on her leg, he rubbed her thigh and forced her hand upon his groin. (Ex. C, pages 23-24). She kept telling him to stop, and tried to push his hand away. (Ex. C, page 39). Mr. Gale recalled that she was upset and crying. (Ex. D, page 50, lines 20-23).

At approximately 10:30, Joshua Shuman was called down to Mr. Gale's office. (Ex. D, page 55, lines 7-10; Ex. B, page 76, lines 11-19). When questioned by Mr. Gale, Joshua Shuman admitted that he engaged in inappropriate conduct. (Ex. D, page 57, lines 14-21; Ex. B, page 99, lines 12-14). Mr. Gale had concluded, immediately following his interview of Joshua Shuman, that he would be disciplined for the inappropriate conduct. (Ex. D, page 61, lines 4-15; see also, Ex. E, page 133, lines 5-13).[10]

The question, raised by Joshua Shuman during his interview, was whether the sexual contact between he and Olivia Becker was consensual. (Ex. D, page 61, lines 6-20). To determine whether the sexual contact was consensual, contrary to what Ms. Becker had originally reported, Mr. Gale continued the investigation. (Ex. D, pages 63-64, 70-71). Joshua

---

[9]    The conclusion concerning whether a search or seizure is constitutionally permissible is for the court to decide. Bolden v. SEPTA, 953 F.2d 807, 822 n.23 (3d Cir. 1991), cert. denied 504 U.S. 943, 112 S.Ct. 2281 (1992).

Shuman was asked to remain in the administrative offices while the second phase of the investigation, to determine if the conduct was consensual, continued.  (Ex. B, page 84, lines 18-21).  While he waited in the office, Mr. Shuman worked on his Agriculture assignments.  (Ex. B, page 86, lines 1-5).  At approximately 11:30, Mr. Shuman was permitted to go to the cafeteria to eat his lunch.  (Ex. B, page 89, lines 13-21).

The second round of questions, to determine whether the inappropriate conduct was consensual, involved re-interviewing Olivia Becker and three or four additional students.  (Ex. D, pages 63-66).  Olivia Becker adamantly denied that the contact was consensual.  (Ex. D, page 63, lines 1-16).  Once the second round of questions was completed, Mr. Gale and Mr. Baddick re-interviewed Joshua Shuman.  (Ex. B, page 93, lines 6-25; Ex. D, page 70).

After the second round of interviews, Mr. Gale made the judgment that the contact was not consensual.  (Ex. D, page 70, lines 22-24).  At approximately 1:00 p.m., Mr. Gale advised Joshua Shuman that he was being suspended for four days and he called Ms. Shertzer.  (Ex. B, page 96, lines 20-25; Ex. D, page 92).

Joshua Shuman was questioned twice for ten to fifteen minutes each.  (Ex. B, page 96).  After the first interview, it was concluded that Joshua Shuman would be disciplined for inappropriate conduct.  However, his version of the events, specifically that the contact was consensual, led to a second round of interviews.  Mr. Shuman was questioned for a total of twenty to twenty-five minutes.  He was kept in the administrative offices from approximately 10:30 a.m. until 1:00 p.m., during which time he was permitted to go to the cafeteria for lunch, study, and get a drink.  While he was apprehensive about the investigation, his primary concern was the punishment he would face at home.  (Ex. B, pages 86, 96, 110, lines 7-10; Ex. D, pages

---

[10]    In the criminal context, detention after the criminal is charged or convicted does not constitute a Fourth Amendment violation.  Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998).

55, 62, 70, 75).  At the same time Mr. Gale was conducting Joshua Shuman's investigation, he was also investigating a drug possession case.  (Ex. D, pages 77, 91).

Balancing a public school student's reduced constitutional expectations against the school district's legitimate interests in maintaining a school environment free from misconduct, the Defendants submit that the limited intrusion upon Plaintiff, Joshua Shuman's Fourth Amendment rights, if any, was reasonable.  See, Vernonia, 515 U.S. 646, ----, 115 S.Ct. at 2392; T.L.O., 469 U.S. at 341; Rinker v. Sipler, 264 F.Supp.2d 181, 187-188 (M.D. Pa. 2003).  It is respectfully submitted that there are no material facts in dispute and Plaintiffs have failed to establish a Fourth Amendment violation as a matter of law.  The Defendants' actions were reasonable, not arbitrary, capricious, or for the purpose of harassment, and the Plaintiffs' Fourth Amendment claim should be dismissed.

### a.    Qualified Immunity

Even assuming Plaintiffs have a viable Fourth Amendment claim, the individually named defendants, Gary B. Campbell, Donald Stewart, Janice Mindish, Brian D. Baddick, and Philip B. Gale are entitled to qualified immunity.   In support of their affirmative defense of qualified immunity, the Defendants incorporate the argument set forth in Section B-1-a, above.

### 1)    Gary Campbell

Again, Gary Campbell, had no involvement in this case.  As set forth in argument section B-1-a-1), above, it is respectfully submitted that the Plaintiffs' claims against Dr. Campbell are unwarranted because of his lack of personal involvement.  Furthermore, Dr. Campbell is entitled to qualified immunity from liability for Plaintiffs' Fourth Amendment claim.   None of Dr. Campbell's conduct can fairly be described as violating a "clearly established" Fourth Amendment right and a reasonable official in Dr. Campbell's position could not believe that his

conduct violated any clearly established constitutional right.  Gary Campbell should be granted qualified immunity.

### 2)    Donald Stewart

Donald Stewart, also had no involvement in this case.  As set forth in argument section B-1-a-2), above, it is respectfully submitted that the Plaintiffs' Fourth Amendment claims against Donald Stewart are also unwarranted because of his lack of personal involvement.  Furthermore, Mr. Stewart is entitled to qualified immunity from liability for Plaintiffs' Fourth Amendment claim.  None of his conduct can fairly be described as violating a "clearly established" Fourth Amendment right and a reasonable official in Mr. Stewart's position could not believe that his conduct violated any clearly established constitutional right.  Donald Stewart should be granted qualified immunity.

### 3)    Janice Mindish

As set forth in argument section B-1-a-3), above, the Fourth Amendment claim asserted against Dr. Mindish should be dismissed because of her lack of personal involvement in the purported constitutional deprivation.  Furthermore, Dr. Mindish is entitled to qualified immunity from liability for the Fourth Amendment claim.  The conduct attributed to Dr. Mindish cannot fairly be described as violating a "clearly established" Fourth Amendment right and a reasonable official in Dr. Mindish's position could not believe that her conduct violated any clearly established constitutional right.  Janice Mindish should be granted qualified immunity.

### 4)    Brian Baddick

As set forth in argument section B-1-a-4), above, the only culpable conduct attributed to Brian Baddick was an offensive question during the second interview of Joshua Shuman.  The Fourth Amendment claim asserted against Mr. Baddick should be dismissed because of his lack of personal involvement in the purported constitutional deprivation.  Furthermore, Mr. Baddick

is entitled to qualified immunity from liability for the Fourth Amendment claim.  Mr. Baddick's purported conduct cannot fairly be described as violating a "clearly established" Fourth Amendment right and a reasonable official in Mr. Baddick's position could not believe that his conduct violated any clearly established constitutional right.  Brian Baddick should be granted qualified immunity.

### 5)    Philip Gale

As set forth in argument section B-1-a-5), above, Mr. Gale was in charge of the investigation and he made the judgment on discipline for Mr. Shuman.  (Ex. D, pages 49-71 (detailing the investigation and conclusion on discipline)).  It is respectfully submitted that a reasonable official in Mr. Gale's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." McLaughlin, 271 F.3d at 570 –571 (citations omitted).  Furthermore, Mr. Gale acted reasonably in a good faith effort to fulfill his responsibilities as an Assistant Principal. Wilson v. Schillinger, 761 F.2d at 929; Wood, 420 U.S. at 321.  Moreover, even if Mr. Gale was mistaken about Joshua Shuman's culpability, qualified immunity applies so long as the acts at issue are reasonable. Anderson, 483 U.S. at 641.[11]

As set forth above, Joshua Shuman was questioned twice for ten to fifteen minutes each. (Ex. B, page 96).  After the first interview, it was concluded that Joshua Shuman would be disciplined for inappropriate conduct.  However, his version of the events, specifically that the contact was consensual, led to a second round of interviews. Mr. Shuman was questioned for a total of twenty to twenty-five minutes.  He was kept in the administrative offices from

---

[11] The question of whether a defendant's conduct was reasonable for Fourth Amendment purposes and whether he/she acted reasonably for qualified immunity purposes are not the same.  Qualified immunity is designed to avoid liability even where an official may not have complied with the Fourth Amendment but could reasonably believe that he/she did.  Anderson, 483 U.S. at 643 – 644.

approximately 10:30 a.m. until 1:00 p.m., during which time he was permitted to go to the cafeteria for lunch, study, and get a drink. While he was apprehensive about the investigation, his primary concern was the punishment he would face at home. (Ex. B, pages 86, 96, 110, lines 7-10; Ex. D, pages 55, 62, 70, 75).

Ms. Shertzer testified that "Mr. Gale did no respond to the request of documentation for his decision in my son's suspension. Mr. Gale suspended my son without proof of an incident. Mr. Gale detained my son for an unreasonable amount of time, without no (sic) availability to phone home. And I don't feel that Mr. Gale really treated my son with respect for detaining him for that amount of time." (Ex. H, page 121, lines 23-25, page 122, lines 1-11).

The conduct attributed to Mr. Gale cannot fairly be described as violating a "clearly established" Fourth Amendment right and a reasonable official in Mr. Gale's position could not believe that his conduct violated a clearly established Fourth Amendment right. Mr. Gale should be granted qualified immunity from liability for any Fourth Amendment claims.

### b.    Municipal Immunity

Even if Plaintiffs have a viable Fourth Amendment claim, the District and Board are entitled to Municipal Immunity. The District and Board incorporate their argument set forth in section B-1-b, above. Governmental liability under Section 1983 results only when the execution of a "government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694.

In Cornfield, 991, F.2d at 1319, a teacher and a disciplinary dean performed a strip search of the sixteen-year old plaintiff in a boys' school locker room because they suspected he was carrying drugs. Id. The school officials did not find drugs. Id. The plaintiff filed a Section 1983 action against the school board and the school officials who conducted the search. Id. On a

motion to dismiss, the court noted that there was no state law that provided a disciplinary dean may perform strip searches. Id. at 1326.  The court also noted that in the plaintiff's pleadings, he declared that a school board president publicly endorsed strip searches with parental consent. Id. The court dismissed the complaint, however, because the pleadings did not state that the school board president endorsed a policy of unconstitutional searches. Id.  The court reasoned that if the pleadings had asserted that the school board had endorsed an unconstitutional search, only then would that endorsement provide a basis for liability.

Similarly, in Ianson v. Zion-Benton Township High School, 2001 WL 185021 (N.D.Ill. 2001), the court granted a motion to dismiss filed by the school district in a case where the plaintiffs alleged that an unconstitutional seizure had occurred.  The court concluded that because plaintiffs failed to assert that there was an express policy or widespread custom and because none of the named individual defendants, including the superintendent, were final policymakers, under state law there could be no municipal liability.  Ianson, 2001 WL 185021 at *1.

The Board has authority under Pennsylvania law to manage the schools and adopt policies necessary for that broad purpose.  24 P.S. § 5-510.  There in no express policy or custom of the District and/or the Board addressing student seizures nor is there any evidence that the Board has endorsed such a policy.  There is no identified policy, practice or custom amounting to deprivation of student's Fourth Amendment right to be free from unreasonable seizure.  The District and Board respectfully request judgement as a matter of law on Plaintiffs' Fourth Amendment claim.

### 3.        Fourteenth Amendment - Procedural Due Process

Plaintiffs aver that Joshua Shuman was deprived of notice and a proper hearing under the Fourteenth Amendment procedural due process clause.  (Ex. A, Count I, paragraph 57; Count II,

paragraphs 60, 61, 65).[12]  A student has a property interest in public education protected by the procedural component of the Fourteenth Amendment due process clause.  Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).  Due process mandates that any deprivation of that entitlement be preceded by notice and an opportunity to respond.  Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir.1991), cert. denied, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).  In the case of a possible suspension from school for less than ten (10) days, due process requires that the "student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."  Goss at 581.  See also, S.G. v. Sayreville Board of Education, 333 F.3d 417, 424 (3d Cir. 2003).[13]  As for the timing of the notice, no delay is necessary between the time notice is given and the time of the discussion with the student.  Goss at 582.  Students should be provided an "informal give-and-take" with school officials preferably before his exclusion from school.  Id. at 584.  "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred."  Id. at 582.  As long as the student "at least ha[s] the opportunity to characterize his conduct and put it in what he deems the proper context" due process is satisfied.  Id. at 584.

---

[12]      A procedural due process claim is also asserted in Count IV.

[13]      In support of their due process claim, Plaintiffs' cite Sections 12.6 and 12.8 of the Pennsylvania Code and the Penn Manor School District Policy Manual.  Due process is a product of the constitution and the requirements of the Pennsylvania Code do not establish procedural due process.  Patterson v. Armstrong County Children and Youth Services, 141 F.Supp.2d 512, 537 (W.D. Pa. 2001) (the minimum, constitutionally mandated requirements of due process in a given context and case are supplied and defined by federal law, not by state law or regulations), citing Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).  See also, Pennhurst v. Halderman, 465 U.S. 89, 106, 104 S.Ct. 900 (1984).  Moreover, even if the Plaintiffs were able to prove that the District violated the Pennsylvania Code, the Pennsylvania Code establishes no private cause of action.  See Whipple v. Warren County School District, 133 F.Supp.2d 381, 383 (W.D. Pa. 2000)(refusing to find an independent cause of action under the Pennsylvania Code where the plaintiff did not cite, nor did the court find, a particular provision of the state regulations which would permit a private cause of action).

Plaintiff, Joshua Shuman, was suspended for four (4) days.  (Ex. A, ¶ 24; Ex. B, pages 96, 100).  Prior to his suspension he was given oral notice of the charges against him, an explanation of the evidence that Mr. Gale had, and an opportunity to present his side of the story.

Joshua Shuman testified that he was given oral notice of the charges against him at the time of his interview with Mr. Gale.  (Ex. B, pages 81-82, 112, 166).  Specifically, he testified that he knew why he was being called to the office, Mr. Gale asked him to relay the events of December 7, 2001 and Mr. Gale advised him, "[Olivia Becker] was claiming that I physically forced my hand upon her, and that she was very upset about it."  (Ex. B, page 75, lines 18-22; page 77, lines 22-25; page 78, lines 1-5; page 81, lines 17-20).  Further, he was asked, "[Y]ou knew that it was Olivia Becker claiming that you had forced yourself in some fashion upon her?"  (Ex. B, page 112, lines 12-16).  To which Mr. Shuman responded, "Yes."  (Ex. B., pages 112, line 16).

Mr. Gale also confirmed that he had provided Mr. Shuman with notice of the charges pending against him.  (Ex. D, pages 55-56).  When Mr. Shuman first arrived in his office, at approximately 10:30 a.m. on December 10, 2001, Mr. Gale testified that:

> I informed him of what he was being accused of … I informed him that he was being accused of inappropriately touching a young lady in his classroom … I explained to him what the girl had reported to me, that he had touched her on the thigh, moved up to her crotch and up to her breasts and took her hand and forced it upon him on his crotch.

(Ex. D, page 55, lines 19-25; page 56, lines 11-16).

While Joshua Shuman agreed that the contact between he and Olivia Becker had occurred, he contended that it was consensual.  (Ex. B, pages 166-168; Ex. D, page 57, lines 15-21).  Therefore, he was given an explanation of the evidence that Mr. Gale had against him on

the issue of whether or not the contact was consensual.  (Ex. B, page 81, pages 166-167; Ex. D, pages 55-57).  He was advised that the evidence consisted of Ms. Becker's statements and Mr. Shuman's own statements.  (Id.).  He was advised that their respective versions of events did not match to the extent that Ms. Becker claimed the sexual contact was *not* consensual.  (Ex. B, page 81; Ex. D, pages 56-57).

Mr. Shuman was given an opportunity to present his side of the story.  (Ex. B, pages 82, 112; Ex. D, pages 57-61).  At his deposition, Mr. Shuman was asked, "You related to Mr. Gale your complete version of the events of December 7?"  (Ex. B, page 82, lines 18-20).  He responded, "That's correct."  (Ex. B, page 82, line 21).  Further, he was asked, "Do you believe that you had an adequate opportunity to explain your side of the story?"  (Ex. B, page 112, lines 17-19).  He responded, "Yes."  (Ex. B, page 112, line 20).

Procedural due process for Joshua Shuman's suspension required oral notice of the charges against him, an explanation of the evidence that Mr. Gale had, and an opportunity to present his side of the story.  Goss at 581.  The material facts are not in dispute and Joshua Shuman was provided with adequate procedural due process and there is no evidence to establish a denial of adequate procedural due process.  The Defendants respectfully request judgment as a matter of law on the Plaintiffs' Fourteenth Amendment procedural due process claim.

### a.    Qualified Immunity

Even if Plaintiffs have a viable Fourteenth Amendment procedural due process claim, the individually named defendants, Gary B. Campbell, Donald Stewart, Janice Mindish, Brian D. Baddick, and Philip B. Gale are entitled to qualified immunity.  In support of their affirmative defense of qualified immunity, the Defendants incorporate the argument set forth in Section B-1-a, above.

### 1)    Gary Campbell

Again, Gary Campbell, had no involvement in this case.  As set forth in argument section B-1-a-1), above, it is respectfully submitted that the Plaintiffs' claims against Dr. Campbell are unwarranted because of his lack of personal involvement.  Furthermore, Dr. Campbell is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claims.  None of Dr. Campbell's conduct can fairly be described as violating a "clearly established" Fourteenth Amendment procedural due process right and a reasonable official in Dr. Campbell's position could not believe that his conduct violated any clearly established constitutional right.  Gary Campbell should be granted qualified immunity.

### 2)    Donald Stewart

Donald Stewart, also had no involvement in this case.  As set forth in argument section B-1-a-2), above, it is respectfully submitted that the Plaintiffs' claims against Mr. Stewart are unwarranted because of his lack of personal involvement.  Furthermore, Mr. Stewart is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claims.  None of his conduct can fairly be described as violating a "clearly established" Fourteenth Amendment procedural due process right and a reasonable official in Mr. Stewart's position could not believe that his conduct violated any clearly established constitutional right.  Donald Stewart should be granted qualified immunity.

### 3)    Janice Mindish

As set forth in argument section B-1-a-3), above, it is respectfully submitted that the Plaintiffs' claims against Dr. Mindish are unwarranted because of her lack of personal involvement.  Furthermore, Dr. Mindish is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claims.  The conduct attributed to Dr. Mindish cannot fairly

be described as violating a "clearly established" Fourteenth Amendment procedural due process right and a reasonable official in Dr. Mindish's position could not believe that her conduct violated any clearly established constitutional right. Janice Mindish should be granted qualified immunity.

### 4)    Brian Baddick

As set forth in argument section B-1-a-4), above, it is respectfully submitted that the Plaintiffs' claims against Mr. Baddick are unwarranted because of his lack of personal involvement. Furthermore, Mr. Baddick is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claims. The only culpable conduct attributed to Brian Baddick was an offensive question during the second interview of Joshua Shuman. Mr. Baddick's purported conduct cannot fairly be described as violating a "clearly established" Fourteenth Amendment procedural due process right and a reasonable official in Mr. Baddick's position could not believe that his conduct violated any clearly established constitutional right. Brian Baddick should be granted qualified immunity.

### 5)    Philip Gale

As set forth in argument section B-1-a-5), above, Mr. Gale was in charge of the investigation and he made the judgment on discipline for Mr. Shuman. (Ex. D, pages 49-71 (detailing the investigation and conclusion on discipline)). It is respectfully submitted that Mr. Gale is entitled to qualified immunity because a reasonable official in Mr. Gale's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." McLaughlin, 271 F.3d at 570 –571 (citations omitted). Furthermore, Mr. Gale is also entitled to qualified immunity because he acted reasonably in a good faith effort to fulfill his responsibilities as an Assistant Principal. Wilson, 761 F.2d at 929; Wood, 420 U.S. at 321. Moreover, even if Mr. Gale was mistaken about Joshua

Shuman's culpability, qualified immunity applies so long his actions were reasonable. Anderson, 483 U.S. at 641.

As set forth above, Mr. Gale provided Joshua Shuman with notice and an opportunity to respond to the charges.  Mr. Gale's conduct cannot fairly be described as violating a "clearly established" Fourteenth Amendment procedural due process right and a reasonable official in his position could not believe that his conduct violated any clearly established constitutional right. Mr. Gale acted reasonably and in good faith effort to fulfill his duties as an Assistant Principal. Mr. Gale should be granted qualified immunity from liability for any Fourteenth Amendment procedural due process claims.

### b.    Municipal Immunity

Assuming that Plaintiffs have a viable Fourteenth Amendment procedural due process claim, the District and Board are entitled to Municipal Immunity.  The District and Board incorporate their argument set forth in section B-1-b, above.  Governmental liability under Section 1983 results only when the execution of a "government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell, 436 U.S. at 694.

There is no identified District or Board policy, practice or custom amounting to deprivation of student's Fourteenth Amendment procedural due process right nor is there any evidence that the Board has endorsed such a policy.  The District and Board respectfully request judgement as a matter of law on Plaintiffs' Fourteenth Amendment procedural due process claim.

### 2.    Fourteenth Amendment - Equal Protection

Plaintiffs aver that the Defendants violated "Equal Protection laws" by selectively investigating and prosecuting the Plaintiff.  (Ex. A, Count II, paragraphs 60, 65).[14]  Plaintiff is neither a member of a suspect class, nor has he been deprived of a fundamental right.[15]  The "rational basis" standard applies to an equal protection claim where the Plaintiff is not a member of a suspect class and the plaintiffs have not been deprived of a fundamental constitutional right. See, Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (citations omitted); see also, Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157 (3d Cir. 2002).  Where neither a suspect class nor a fundamental right is involved, the court must uphold the constitutionality of the state action so long as it bears a rational relation to some legitimate end.  Brian B. ex rel. Lois B. v. Com. of Pennsylvania Dept. of Educ., 230 F.3d 582, 586 (3d Cir. 2000), cert denied 532 U.S. 472, 121 S.Ct. 1603 (2001), citing Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); see also, Murillo v. Bambrick, 681 F.2d 898, 905-906 (3d Cir. 1982); Federal Communications Comm'n v. Beach Communications, 508 U.S. 307, 314-15, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

In meeting its burden, the Plaintiff may introduce evidence supporting its claim that the state action is irrational, but the Plaintiff cannot prevail if it is evident from all considerations that the question was at least debatable.  Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 724 (1981), rehearing denied 101 S.Ct. 1735, 450 U.S. 1027 (1981), citing

---

[14]    An Equal Protection claim also appears in Count VI.

[15]    The Court has already appropriately concluded that deprivation of public education does not implicate a fundamental constitutional right.  (See, Ex. J).

United States v. Carolene Products Co., 304 U.S. 144, 153-154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).  See also, Clover Leaf Creamery Co., 449 U.S. at 464, 101 S.Ct. at 724.

Mr. Gale was presented with conclusive evidence that Mr. Shuman had engaged in inappropriate contact with Olivia Becker.  (Ex. B, page 99, lines 9-14; Ex. D, page 57, lines 14-21).  Mr. Shuman admitted that this was sufficient for some level of punishment.  (Ex. B, page 62, lines 16-23, page 99, lines 9-14).  Mr. Shuman contends, however, that because he reported that the inappropriate contact was *consensual*, he should not have been so severely punished, and presumably, Ms. Becker should have been punished. (Ex. B, pages 166-168).  Simply put, the District should have believed his version of the facts over Ms. Becker's.  (Ex. B, page 166-167).  Mr. Shuman recognized that, because he was presented with two conflicting versions of the facts, Mr. Gale had to make a judgment about credibility.  (Ex. B, page 167, lines 6-15).  He testified that such a credibility determination was "appropriate."  (Ex. B, page 167, line 15).  He has sued the Defendants, however, because they did not believe him.  (Ex. B, page 167, lines 15-25).

The Defendants were presented with evidence that reasonably supported their conclusion that the Plaintiff, Joshua Shuman, engaged in inappropriate sexual contact with Olivia Becker, against her will.  The evidence that tended to support Olivia Becker's position that the contact was not consensual, included the fact that she reported to her guidance counselor for help.  (Ex. E, page 141-142).  There would be no reason to report for help if the contact had been consensual.  (Id.).  Immediately following the class, she went to three of her friends to report the unwanted contact.  (Id.).  When these students were interviewed, each confirmed that Olivia Becker had reported the unwanted contact to them.  (Ex. D, pages 65-66).  Olivia Becker came to Mr. Gale upset and crying.  (Ex. D, page 50, lines 20-23).  To the contrary, Mr. Gale observed that Joshua Shuman appeared nervous during his interview.  (Ex. D, page 59, lines 21-25; page

60, lines 1-4).  Ultimately, Mr. Gale made the judgment that the contact was not consensual. (Ex. D, pages 70-71).  While Joshua Shuman agrees that a credibility judgment was appropriate, he contends that Olivia Becker should not have been believed. (Ex. B, pages 166-168).

While the question of who was reporting the truth, either Mr. Shuman or Ms. Becker, may have been debatable, Mr. Gale's judgment that Ms. Becker was telling the truth was not irrational.  Therefore, the decision to suspend Mr. Shuman for four (4) days does not violate his equal protection rights.  See Clover Leaf Creamery Co., 449 U.S. at 464, 101 S.Ct. at 724.  Even if the Plaintiffs are able to come forward with evidence suggesting that the contact between Mr. Shuman and Ms. Becker was consensual, and the Defendants were mistaken, the original conclusion that Ms. Becker was reporting the truth still suffices under the law as an independent rational basis for rejecting Plaintiffs' version of the events of December 7, 2001.  See Holt Cargo Systems, Inc., 20 F.Supp. 2d at 828 (citations omitted).

There are no material facts in dispute.  The Defendants had a rational basis for suspending Joshua Shuman.  Therefore, Plaintiff's Section 1983 claim for purported violation of the equal protection clause should be dismissed as a matter of law.

### a.    Qualified Immunity

Even if Plaintiffs have a viable Fourteenth Amendment equal protection claim, the individually named defendants, Gary B. Campbell, Donald Stewart, Janice Mindish, Brian D. Baddick, and Philip B. Gale are entitled to qualified immunity.  In support of their affirmative defense of qualified immunity, the Defendants incorporate the argument set forth in Section B-1-a, above.

### 1)    Gary Campbell

Again, Gary Campbell, had no involvement in this case.  As set forth in argument section B-1-a-1), above, it is respectfully submitted that the Plaintiffs' claims against Dr. Campbell are

unwarranted because of his lack of personal involvement.  Furthermore, Dr. Campbell is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claims.  None of Dr. Campbell's conduct can fairly be described as violating a "clearly established" Fourteenth Amendment equal protection right and a reasonable official in Dr. Campbell's position could not believe that his conduct violated any clearly established constitutional right.  Gary Campbell should be granted qualified immunity.

### 2)       Donald Stewart

Donald Stewart, also had only minimal involvement in this case.  As set forth in argument section B-1-a-2), above, it is respectfully submitted that the Plaintiffs' claims against Mr. Stewart are unwarranted because of his lack of personal involvement.  Furthermore, Mr. Stewart is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claims.  None of his conduct can fairly be described as violating a "clearly established" Fourteenth Amendment equal protection right and a reasonable official in Mr. Stewart's position could not believe that his conduct violated any clearly established constitutional right.  Donald Stewart should be granted qualified immunity.

### 3)       Janice Mindish

As set forth in argument section B-1-a-3), above, it is respectfully submitted that the Plaintiffs' claims against Dr. Mindish are unwarranted because of her lack of personal involvement.  Furthermore, Dr. Mindish is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claims.  The conduct attributed to Dr. Mindish cannot fairly be described as violating a "clearly established" Fourteenth Amendment equal protection right and a reasonable official in Dr. Mindish's position could not believe that her conduct violated any clearly established constitutional right.   Janice Mindish should be granted qualified immunity.

### 4)    Brian Baddick

As set forth in argument section B-1-a-4), above, the only culpable conduct attributed to Brian Baddick was an offensive question during the second interview of Joshua Shuman.  It is respectfully submitted that the Plaintiffs' claims against Mr. Baddick are unwarranted because of his lack of personal involvement.  Furthermore, Mr. Baddick is entitled to qualified immunity from liability for Plaintiffs' Fourteenth Amendment claim. Mr. Baddick's purported conduct cannot fairly be described as violating a "clearly established" Fourteenth Amendment equal protection right and a reasonable official in Mr. Baddick's position could not believe that his conduct violated any clearly established constitutional right.  Brian Baddick should be granted qualified immunity.

### 5)    Philip Gale

As set forth in argument section B-1-a-5), above, Mr. Gale was in charge of the investigation and he made the judgment on discipline for Mr. Shuman.  (Ex. D, pages 49-71 (detailing the investigation and conclusion on discipline)).  It is respectfully submitted that Mr. Gale is entitled to qualified immunity because a reasonable official in Mr. Gale's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards."  McLaughlin, 271 F.3d at 570 –571 (citations omitted).  Furthermore, Mr. Gale is entitled to qualified immunity because he acted reasonably in a good faith effort to fulfill his responsibilities as an Assistant Principal. Wilson, 761 F.2d at 929; Wood, 420 U.S. at 321.  Moreover, even if Mr. Gale was mistaken about Joshua Shuman's culpability, qualified immunity applies so long as his actions were reasonable.  Anderson, 483 U.S. at 641.

Mr. Gale was presented with conclusive evidence the Mr. Shuman had engaged in inappropriate contact with Olivia Becker.  (Ex. B, page 99, lines 9-14; Ex. D, page 57, lines 14-

21).  Mr. Shuman admitted that this was sufficient for some level of punishment.  (Ex. B, page 62, lines 16-23, page 99, lines 9-14).  Mr. Shuman contends, however, that because he reported that the inappropriate contact was *consensual*, he should not have been so severely punished. (Ex. B, pages 166-168).  Mr. Shuman recognized that, because he was presented with two conflicting versions of the facts, Mr. Gale had to make a judgment about credibility.  (Ex. B, page 167, lines 6-15).  He testified, "That's appropriate."  (Ex. B, page 167, line 15).  Mr. Shuman has sued the Defendants, in part, because they did not believe him.  (Ex. B, page 167, lines 15-25).

The conduct attributed to Mr. Gale cannot fairly be described as violating a "clearly established" Fourteenth Amendment equal protection right and a reasonable official in Mr. Gale's position could not believe that his conduct violated any clearly established constitutional right.  Mr. Gale should be granted qualified immunity from liability for any Fourteenth Amendment equal protection claims.

### b.    Municipal Immunity

Even if Plaintiffs have a viable Fourteenth Amendment equal protection claim, the District and Board are entitled to Municipal Immunity.  The District and Board incorporate their argument set forth in section B-1-b, above.  Governmental liability under Section 1983 results only when the execution of a "government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694.

There in no express policy of the District and/or the Board addressing student equal protection rights.  There is no identified policy, practice or custom amounting to deprivation of student's Fourteenth Amendment equal protection rights nor is there any evidence that the Board

has endorsed such a policy.  The District and Board respectfully request judgement as a matter of law on Plaintiffs' Fourteenth Amendment equal protection claim.

### C.    **First, Fourth and Fourteenth Amendment Claims**

In Counts IV through VII, Plaintiffs assert claims directly under the First, Fourth and Fourteenth Amendments.  Although the First, Fourth, and Fourteenth Amendments establish the substantive rights of citizens of the United States, these Amendments do not, by their own terms, create remedies for the violation of those rights.  Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995), cert. denied --- U.S. ----, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995) (citation omitted).  Claims brought directly under the United States Constitution "are impermissible because § 1983 provides an adequate, alternative remedial scheme for [Plaintiffs'] alleged constitutional violations."  Smith v. School District of Philadelphia, 112 F.Supp.2d 417, 430 (E.D. Pa. 2000), citing Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (noting that when a plaintiff has a remedy under § 1983, it is the exclusive remedy for alleged constitutional violations).  Furthermore, the claims in Counts IV, V, VI and VII are unnecessarily duplicative of the claims contained in Counts I and II of the Complain, which are addressed above.

In Counts IV, V, VI, and VII, Plaintiffs have asserted claims for violation of the First, Fourth and Fourteenth Amendments.  Because these Amendments to the United States Constitution, standing alone, provide Plaintiffs with no cause of action, and because Plaintiffs have asserted these claims under Section 1983 in Counts I and II of the Compliant , Counts IV, V, VI and VII should be dismissed.

### D.  Supplemental Jurisdiction

The remaining claims in the Plaintiffs' Complaint are state law claims.  (See, Ex. A, Counts VIII – XI).  If the Court dismisses Plaintiffs' federal claims, it has discretion to exercise supplemental jurisdiction over Plaintiffs' state law claims.  See, 28 U.S.C. § 1367.  However, the U.S. Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), has indicated that "if federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  See also, Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); Sambrick v. Borough of Norristown, 639 F.Supp. 1351, 1356 (E.D. Pa. 1986); Lupuszanski v. Fabey, 560 F.Supp. 3, 5 (E.D.Pa. 1982); Lynch v. Taylor, CIV. A. No. 88-9073, 1989 WL 89024, *3 (E.D.Pa., Aug. 4, 1989).

Accordingly, if this Court dismisses all of Plaintiffs' federal claims, the Defendants request that the state law claims likewise be dismissed.

### E.  Intentional Infliction of Emotional Distress
### Shuman and Shertzer v. Mindish and Gale / Shuman v. Baddick

Plaintiffs assert a claim for intentional infliction of emotional distress in Count VIII of their Complaint. (Ex. A, Count VIII).  The claim remains against Dr. Mindish, Mr. Gale, and Mr. Baddick.  (See, Docket Entry No. 19, dismissing Plaintiffs' intentional infliction of emotional distress claim as asserted against Carol Fay, the District and Board, all Board members, Gary B. Campbell and Donald Stewart).  Even if the Court maintains jurisdiction over the Plaintiffs' intentional infliction of emotional distress claim, the claim should be dismissed as a matter of law.

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) that the defendant engaged in extreme and outrageous conduct; (2) the conduct must

be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe.  Brown v. Peoples Security Ins., 890 F.Supp. 411, 415 (E.D. Pa. 1995); Miller v. Hoffman, Civ. A. No. 97-7987, 1999 WL 415397, *8 (E.D. Pa., June 22, 1999).  In order "to satisfy the first element of outrageousness, the conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 85 (3d Cir. 1987), quoting Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Super. 377, 383, 368 A.2d 770, 773 (1976).  See also, Stuckland v. University of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).  Further, in order to establish a cause of action, Plaintiffs must establish that the Defendants had a specific intent to harm them.  D'Errico v. DeFazio, 763 A.2d 424, 434 (Pa. Super. 2000).  Liability under Pennsylvania law for intentional infliction of emotional distress does not extend to insults, threats, annoyances, oppressions, or other trivialities.  Lane v. Cole, 88 F.Supp.2d 403, 406 (E.D. Pa. 2000).

The evidence presented in this case against Dr. Mindish, Mr. Gale and Mr. Baddick, does not rise to the level of outrageousness required to meet the high threshold of this tort.  The conduct of these individuals surrounding the investigation of December 10, 2001 and resulting four (4) day suspension cannot be characterized as so outrageous in character as to "go beyond all possible bounds of decency" and to be regarded as "atrocious, and utterly intolerable in a civilized society."  Therefore, the Defendants respectfully request that Plaintiffs' intentional infliction of emotional distress claim be dismissed as a matter of law.

**F.    Negligence**
      **Shuman and Shertzer v. all individual defendants**

Plaintiffs assert a negligence claim against the Defendants in Count IX of the Complaint. (See, Ex. A, Count IX).  The claim remains viable against the individual defendants.  (See,

Docket Entry No. 19, dismissing Count IX as asserted against the District and Board; see also,

Docket Entry No. 31 dismissing all individually named school board members from this case).

The Defendants respectfully submit that Plaintiffs' negligence claim is absolutely barred by the

Political Subdivision Tort Claims Act, and is barred as asserted against Defendants Dr. Campbell

and Mr. Stewart based upon the common law doctrine of "high public official immunity."

### 1.    Political Subdivision Tort Claims Act

Plaintiffs' negligence claims against the individual defendants are barred by the Political

Subdivision Tort Claims Act, Subchapter C of Chapter 85 of the Judicial Code, Act of October 5,

1980, P.L. 693, No. 142, 42 Pa.C.S.A. § 8541, et seq. (the "Tort Claims Act").  The Tort Claims

Act provides all individual defendants with immunity from a lawsuit brought under the theory of

negligence.  Section 8542(b) of the Tort Claims Act provides that a local governmental agency is

immune from any suit based upon the negligent acts of the agency or an employee, unless the

cause of action relates to one of eight categories: (1) vehicle liability; (2) the care, custody or

control of personal property; (3) the care, custody or control of real property; (4) trees, traffic

controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; or (8) the care,

custody or control of animals.  42 Pa.C.S.A. § 8542(b).

Since the instant action does not fall into one of these eight categories, this Court has

already concluded that the Tort Claims Act immunizes the District and the Board.  (See, Ex. J;

and see, Docket Entry No. 19).  While an individual employee of a government entity may be

liable for conduct which is criminal, fraudulent, or involves actual malice or willful misconduct

(see 42 Pa.C.S.A. § 8550),[16] the Pennsylvania courts have repeatedly applied the Tort Claims

Act bars negligence claims.  See Moser v. Bascelli, 865 F.Supp. 249, 253 (E.D. Pa. 1994);

Simmons v. Township of Moon, 144 Pa.Cmwlth. 198, 207, 601 A.2d 425, 430 (1991). Thus, the immunity must be applied to all remaining individual defendants.

### 2. High Public Official Immunity

Even if Defendants, Dr. Campbell and Mr. Stewart were not immune from liability for Plaintiffs' negligence claim under the Political Subdivision Tort Claims Act, they are immune from liability under Pennsylvania law as "high public officials" entitled to absolute immunity from all tort claims. See Smith v. School District of Philadelphia, 112 F.Supp.2d 417, 425-26 (E.D. Pa. 2000). In Smith, the U.S. District Court for the Eastern District of Pennsylvania, applying Pennsylvania law, concluded that a school superintendent is immune from liability for all torts, including intentional torts. Id., citing, Linder v. Mollan, 544 Pa. 487, 677 A.2d 1194 (1996); Matta v. Burton, 721 A.2d 1164, 1166 (Pa.Cmwlth. 1998); Holt v. Northwest Pa. Trng. Prtshp. Consrtm., Inc., 694 A.2d 1134 (Pa.Cmwlth. 1997); Kuzel v. Krause, 658 A.2d 856 (Pa.Cmwlth. 1995); Petula v. Mellody, 158 Pa.Cmwlth. 212, 631 A.2d A.2d 762 (1993).

This Court has already appropriately applied "high public official immunity" in dismissing the Plaintiffs' intentional infliction of emotional distress claims asserted against Dr. Campbell and Mr. Stewart. (See, Ex. J; and see, Docket Entry No. 19). The immunity applies equally to all tort claims. Therefore, Plaintiffs' negligence claims asserted against Dr. Campbell and Mr. Stewart should be dismissed.

### G. Negligent Infliction of Emotional Distress
### Shuman and Shertzer v. all individual defendants (except Fay)

In Count X of the Complaint, Plaintiffs assert a negligent infliction of emotional distress claim. (Ex. A, Count X). The claim remains viable against Dr. Campbell, Mr. Stewart, Dr.

---

[16]    See Brown v. Muhlenberg Township, 269 F.3d 205, 219 (3d Cir. 2001) (defining willful misconduct as entailing intent to harm); Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582, 600-01 (3d Cir. 1998) (defining willful misconduct as involving knowledge that conduct is unlawful).

Mindish, Mr. Gale, and Mr. Baddick. (See, Docket Entry No. 19, dismissing negligent infliction of emotional distress claim against Ms. Fay, District and Board; see also, Docket Entry No. 31, dismissing all individually named school board members from this case).

      **1.**      **There Are Insufficient Facts To Support A Negligent Infliction of Emotional Distress Claim Against Dr. Campbell, Mr. Stewart, Dr. Mindish, Mr. Gale, and Mr. Baddick.**

Pennsylvania courts have adopted the Restatement definition of the tort of negligent infliction of emotional distress. Armstrong v. Paoli Mem'l Hosp., 633 A.2d 605, 608 (Pa.Super.Ct.1993); Crivellaro v. Pennsylvania Power & Light Co., 491 A.2d 207, 209 (Pa.Super.Ct.1985); Banyas v. Lower Bucks Hosp., 437 A.2d 1236, 1238 (Pa.Super.Ct.1981). Restatement (Second) Torts section 436 provides:

> (1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.
>
> (2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

Restatement (Second) Torts § 436 (1965).

Tort liability for the negligent infliction of emotional distress requires that the plaintiff sustain, as a result of the defendant's negligence, some physical injury in addition to or caused by the emotional disturbance. Restatement (Second) Torts § 436A (1965); Armstrong, 633 A.2d at 609; Wall v. Fisher, 565 A.2d 498, 502 (Pa.Super. Ct.1990); Banyas, 437 A.2d at 1239 (Pa.Super.Ct.1981).

Allegations of "severe anxiety, mental anguish, and emotional distress" are insufficient to establish a negligent infliction of emotional distress claim, when not accompanied by the existence of any actual physical injury. Hudson v. Brandywine Hosp., Civ. A. No. 99-CV-4262, 1999 W.L. 1240956, *2 -3 (E.D.Pa., Dec. 16, 1999).

Neither Plaintiffs, Joshua Shuman or Teresa Shertzer have suffered a physical injury resulting from Defendants' purported conduct.  Moreover, the Defendants engaged in no conduct that presented an unreasonable risk of bodily harm to Mr. Shuman or Ms. Shertzer.  There is no evidence to support Plaintiffs' negligent infliction of emotional distress claim, and the claim should be dismissed as a matter of law.

### 2.    Plaintiffs' Negligent Infliction of Emotional Distress Claims Are Barred by the Political Subdivision Tort Claims Act

Even if Plaintiffs' negligent infliction of emotional distress claim is not dismissed, the Defendants are entitled to immunity under the Tort Claims Act.  The Tort Claims Act provides all individual defendants with immunity from a lawsuit brought under the theory of negligent infliction of emotional distress.

This Court has already concluded that the Tort Claims Act immunizes the District and the Board.  (See, Ex. J; and see, Docket Entry No. 19).  While an individual employee of a government entity may be liable for conduct which is criminal, fraudulent, or involves actual malice or willful misconduct (see 42 Pa.C.S.A. § 8550), the courts in this jurisdiction have repeatedly applied the Tort Claims Act to bar negligent infliction of emotional distress claims against governmental employees.  Moser v. Bascelli, 865 F.Supp. 249, 253-254 (E.D. Pa 1994) (negligent infliction of emotional distress claim against police officers barred by the Tort Claims Act); Cooper v. City of Chester, 810 F.Supp. 618, 625 (E.D.Pa. 1992) (holding local agency and employees immune from tort suits arising out of negligence, gross negligence, negligent hiring,

retention and supervision); Lynch, 1989 WL 89024 at *3 (holding that since individual defendants are immune from liability for negligence under the Political Subdivision Tort Claims Act, plaintiffs' claims for the negligent infliction of emotional distress, negligence and gross negligence are dismissed); Leidy v. Borough of Glenolden, 277 F.Supp.2d 547, 568 (E.D.Pa., 2003) (under the Tort Claims Act, individual defendants are immune from liability for negligent infliction of emotional distress); DiJoseph v. City of Philadelphia, 947 F.Supp. 834, 843 (E.D.Pa., 1996) (police officers immune from suit on the basis of negligence and negligent infliction of emotional distress under § 8545); Smith v. School District of Philadelphia, 112 F.Supp.2d 417, 425-26 (E.D. Pa. 2000) (a superintendent, as an employee of a governmental entity, is immune from liability for negligent infliction of emotional distress under the Political Subdivision Tort Claims Act).

### H.    Punitive Damages
Shuman and Shertzer v. all individual defendants

In Count XI of the Complaint, Plaintiffs request punitive damages.  (Ex. A, Count XI). This claim remains viable against the individual defendants, Dr. Campbell, Mr. Stewart, Dr. Mindish, Mr. Baddick, Mr. Gale, and Ms. Fay.  (See, Docket Entry No. 19, dismissing punitive damages request as asserted against District and Board; see also, Docket Entry No. 31, dismissing all individually named school board members from this case).

To establish a viable claim for punitive damages, Plaintiffs must produce evidence of outrageous misconduct, evil motive or reckless indifference.  See Feld v. Merriam, 458 A.2d 742, 747-748 (Pa. 1984), citing Chambers v. Montgomery, 192 A.2d 355 (Pa. 1963). Pennsylvania courts have adopted "Section 908(2) of the RESTATEMENT (SECOND) OF TORTS regarding the imposition of punitive damages."  Id.  Section 908(2) of the RESTATEMENT (SECOND) OF TORTS provides in pertinent part:

> (1)  punitive damages are damages … awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.
>
> (2)  Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.

<u>Id.</u>

There is no genuine issue of material fact as to whether Dr. Campbell, Mr. Stewart, Dr. Mindish, Mr. Gale Ms. Fay or Mr. Baddick engaged in outrageous conduct with evil motive or reckless indifference to Plaintiffs' rights.   The Defendants respectfully request summary judgment on Plaintiffs' punitive damages claim.

## IV.    <u>Conclusion</u>

The Defendants respectfully request judgment in their favor and against Plaintiffs on all claims.

Respectfully submitted:

**SWEET, STEVENS, TUCKER & KATZ** LLP

Date:  <u>December 15, 2003</u>        By:    <u>/s/ Jason R. Wiley</u>
**Ellis H. Katz, Esquire**, Atty I.D. #34835
**Jason R. Wiley, Esquire**, Atty I.D. #79478
331 Butler Avenue, P.O. Box  5069
New Britain, Pennsylvania  18901
Telephone:  215-345-9111
Facsimile:  215-348-1147

Attorneys for Defendants,
Penn Manor School District, Penn Manor School Board, Gary B. Campbell, Donald Stewart, Janice M. Mindish, Brian D. Baddick, Philip Gale, and Carole Fay.