IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSHUA SHUMAN,** a minor by and through his mother and natural guardian **TERESA SHERTZER, and TERESA SHERTZER,** individually | :<br>:<br>:<br>:  CIVIL ACTION NO. 02-CV-3594<br>: |
| **Plaintiffs** | : |
| v. | :<br>:  (GARDNER) |
| **PENN MANOR SCHOOL DISTRICT, PENN MANOR SCHOOL BOARD, GARY B. CAMPBELL,** individually and as Superintendent of the Penn Manor School District,<br>AND<br>**DONALD STEWART,** individually and as Acting Superintendent of the Penn Manor School District<br>AND<br>**JANICE M. MINDISH,** individually and as Principal of Penn Manor High School,<br>AND<br>**BRIAN D. BADDICK,** individually and as Assistant Principal of Penn Manor High School,<br>AND<br>**PHILIP B. GALE,** individually and as Dean of Students of Penn Manor High School,<br>AND<br>**CAROLE FAY,** individually and as a teacher and Agriculture Coordinator at Penn Manor High School | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| **Defendants** | : |

**DEFENDANTS, PENN MANOR SCHOOL DISTRICT, PENN MANOR SCHOOL BOARD, GARY B. CAMPBELL, DONALD STEWART, JANICE M. MINDISH, BRIAN D. BADDICK, PHILIP GALE, AND CAROLE FAY'S**
<u>**STATEMENT OF MATERIAL FACTS**</u>

The Defendants, Penn Manor School District (hereinafter referred to as the "District"), Penn Manor School Board (hereinafter referred to as the "Board"), Gary B. Campbell, former Superintendent of the Penn Manor School District, Donald Stewart, Superintendent of the Penn Manor School District, Janice M. Mindish, Principal of Penn Manor High School, Brian D.

Baddick, Assistant Principal of Penn Manor High School, Philip Gale, Assistant Principal of Penn Manor High School, and Carole Fay, teacher and Agriculture Coordinator at Penn Manor High School,[1] present the following Statement of Material Facts in support of their Motion for Summary Judgment:

1. Plaintiffs' allegations arise from an incident that occurred on December 7, 2001 between the minor Plaintiff, Joshua Shuman, and another student, Olivia Becker. (See, Plaintiffs' Complaint, attached as Exhibit "A", paragraphs 14-16; see also, deposition transcript of Plaintiff, Joshua Shuman, attached as Exhibit "B", pages 47-62).[2]

2. Ms. Becker reported to her guidance counsel, Michael Wildasin, that Joshua Shuman engaged in inappropriate sexual contact against her will during third block classes on December 7. (See, deposition transcript of Olivia Becker, attached as Exhibit "C", page 46, lines 13-25).

3. Assistant High School Principal, Philip Gale, investigated the allegations. (See, deposition transcript of Philip Gale, attached as Exhibit "D", pages 49-55).

4. At approximately 10:00 a.m., on Monday, December 10, 2001, Olivia Becker reported to Assistant Principal, Philip Gale, that she had been the victim of inappropriate sexual contact, against her will on Friday, December 7, 2001. (Ex. D, pages 49, 54, lines 13-16).

5. Ms. Becker testified that Joshua Shuman put his hand on her leg, he rubbed her thigh and forced her hand upon his groin. (Ex. C, pages 23-24).

---

[1] C. Willis Herr, Richard L. Frerichs, Jeffrey E. Lyon, Patrick T. Kline, Donald H. Anderson, H. Thomas Herr, Kelly K. Withum, Donna Wert, Jeffrey G. Kreider, Dolores Warfel, and Steve Skrocki, were each individually named defendants in Plaintiffs' Complaint. By Stipulation of the parties dated November 3, 2003 and Court Order dated November 6, 2003, each of these defendants were voluntarily dismissed from this case.

6. She kept telling him to stop, and tried to push his hand away. (Ex. C, page 39).

7. Mr. Gale recalled that she was upset and crying. (Ex. D, page 50, lines 20-23).

8. At approximately 10:30, Joshua Shuman was called down to Mr. Gale's office. (Ex. D, page 55, lines 7-10; Ex. B, page 76, lines 11-19).

9. Joshua Shuman testified that he was given oral notice of the charges against him at the time of his interview with Mr. Gale. (Ex. B, pages 81-82, 112, 166).

10. Specifically, he testified that he knew why he was being called to the office, Mr. Gale asked him to relay the events of December 7, 2001 and Mr. Gale advised him, "[Olivia Becker] was claiming that I physically forced my hand upon her, and that she was very upset about it." (Ex. B, page 75, lines 18-22; page 77, lines 22-25; page 78, lines 1-5; page 81, lines 17-20).

11. Further, he was asked, "[Y]ou knew that it was Olivia Becker claiming that you had forced yourself in some fashion upon her?" (Ex. B, page 112, lines 12-16). To which Mr. Shuman responded, "Yes." (Ex. B., pages 112, line 16).

12. Mr. Gale also confirmed that he had provided Mr. Shuman with notice of the charges pending against him. (Ex. D, pages 55-56).

13. While Joshua Shuman agreed that the contact between he and Olivia Becker had occurred, he contended that it was consensual. (Ex. B, pages 166-168; Ex. D, page 57, lines 15-21).

14. He was given an explanation of the evidence that Mr. Gale had against him on the issue of whether or not the contact was consensual. (Ex. B, page 81, pages 166-167; Ex. D, pages 55-57).

---

[2] Exhibits "A" through "J" referenced herein are attached to the Defendants' Brief in Support of their Motion for Summary Judgment.

15. He was advised that the evidence consisted of Ms. Becker's statements and Mr. Shuman's own statements. (Id.).

16. He was advised that their respective versions of events did not match to the extent that Ms. Becker claimed the sexual contact was *not* consensual. (Ex. B, page 81; Ex. D, pages 56-57).

17. Mr. Shuman was given an opportunity to present his side of the story. (Ex. B, pages 82, 112; Ex. D, pages 57-61).

18. At his deposition, Mr. Shuman was asked, "You related to Mr. Gale your complete version of the events of December 7?" (Ex. B, page 82, lines 18-20). He responded, "That's correct." (Ex. B, page 82, line 21). Further, he was asked, "Do you believe that you had an adequate opportunity to explain your side of the story?" (Ex. B, page 112, lines 17-19). He responded, "Yes." (Ex. B, page 112, line 20).

19. When questioned by Mr. Gale, Joshua Shuman admitted that he engaged in inappropriate conduct. (Ex. D, page 57, lines 14-21; Ex. B, page 99, lines 12-14).

20. Mr. Gale observed that Joshua Shuman appeared nervous during his interview. (Ex. D, page 59, lines 21-25; page 60, lines 1-4).

21. Mr. Gale had concluded, immediately following his interview of Joshua Shuman, that he would be disciplined for the inappropriate conduct. (Ex. D, page 61, lines 4-15; see also, Ex. E, page 133, lines 5-13).

22. The question, raised by Joshua Shuman during his interview, was whether the sexual contact between he and Olivia Becker was consensual. (Ex. D, page 61, lines 6-20).

23. To determine whether the sexual contact was consensual, contrary to what Ms. Becker had originally reported, Mr. Gale continued the investigation. (Ex. D, pages 63-64, 70-71).

24. Joshua Shuman was asked to remain in the administrative offices while the second phase of the investigation, to determine if the conduct was consensual, continued. (Ex. B, page 84, lines 18-21).

25. While he waited in the office, Mr. Shuman worked on his Agriculture assignments. (Ex. B, page 86, lines 1-5).

26. At approximately 11:30, Mr. Shuman was permitted to go to the cafeteria to eat his lunch. (Ex. B, page 89, lines 13-21).

27. The second round of questions, to determine whether the inappropriate conduct was consensual, involved re-interviewing Olivia Becker and three or four additional students. (Ex. D, pages 63-66).

28. Olivia Becker adamantly denied that the contact was consensual. (Ex. D, page 63, lines 1-16).

29. Once the second round of questions was completed, Mr. Gale and Mr. Baddick re-interviewed Joshua Shuman. (Ex. B, page 93, lines 6-25; Ex. D, page 70).

30. Joshua Shuman was questioned twice for ten to fifteen minutes each. (Ex. B, page 96).

31. After the second round of interviews, Mr. Gale made the judgment that the contact was not consensual. (Ex. D, page 70, lines 22-24).

32. At approximately 1:00 p.m., Mr. Gale advised Joshua Shuman that he was being suspended for four days and he called Ms. Shertzer. (Ex. B, page 96, lines 20-25; Ex. D, page 92).

33. Mr. Shuman was kept in the administrative offices from approximately 10:30 a.m. until 1:00 p.m., during which time he was permitted to go to the cafeteria for lunch, study, and get a drink. (Ex. B, pages 86, 96, 110, lines 7-10; Ex. D, pages 55, 62, 70, 75).

34. Mr. Shuman was suspended from school for four days, from December 11, 2001 through December 14, 2001. (Ex. A, paragraph 24; Ex. B, pages 96, 100).

35. Mr. Shuman returned to school on Monday, December 17, 2001. (Ex. A, Paragraph 44).

36. At the same time Mr. Gale was conducting Joshua Shuman's investigation, he was also investigating a drug possession case. (Ex. D, pages 77, 91).

37. Plaintiff is neither a member of a suspect class, nor has he been deprived of a fundamental right.

38. Mr. Gale was presented with conclusive evidence the Mr. Shuman had engaged in inappropriate contact with Olivia Becker. (Ex. B, page 99, lines 9-14; Ex. D, page 57, lines 14-21).

39. Mr. Shuman admitted that this was sufficient for some level of punishment. (Ex. B, page 62, lines 16-23, page 99, lines 9-14).

40. Mr. Shuman contends, however, that because he reported that the inappropriate contact was *consensual*, he should not have been so severely punished, and presumably, Ms. Becker should have been punished. (Ex. B, pages 166-168).

41. Mr. Shuman recognized that, because he was presented with two conflicting versions of the facts, Mr. Gale had to make a judgment about credibility. (Ex. B, page 167, lines 6-15).

42. He testified that such a credibility determination was "appropriate." (Ex. B, page 167, line 15).

43. Neither Joshua Shuman nor Teresa Shertzer has suffered a physical injury resulting from Defendants' purported conduct.

44. The Defendants engaged in no conduct that presented an unreasonable risk of bodily harm to Mr. Shuman or Ms. Shertzer.

45. Gary Campbell was not involved in this case. (Ex. B, page 194, lines 14-17; see also, Teresa Shertzer Deposition Transcript, attached as Ex. H, pages 116-117; see also, Donald Stewart Deposition Transcript, attached as Ex. G, pages 14-16, pages 125-134).

46. Donald Stewart was not involved in this case. (Ex. H, pages 118-120; Ex. B, page 197; see also, Deposition Transcript of Donald Stewart, attached as Ex. G, pages 91-93).

47. Janice Mindish was aware that the investigation was going on, but was not otherwise involved in this case. (See, Deposition Transcript of Janice Mindish, attached as Ex. E, pages 107-122).

48. Brian Baddick was involved in a very limited portion of the investigation. Joshua Shuman testified that Brian Baddick was involved in a limited part of his interview. (Ex. B, page 93, lines 8-17). Mr. Shuman testified that Mr. Baddick asked him, "[S]o did you feel her to get a rise?" (Ex. B, page 93, lines 13-14). Mr. Shuman was offended by this question. (Ex. B, pages 140-141). Mr. Shuman was asked, "Why did you sue Brian Baddick?" He responded, "Because he was also there and he made a shrewd comment." (Ex. B, page 197, lines 3-7). He testified that there was no other reason for suing Mr. Baddick. (Ex. B, page 197, lines 6-7).

49. Mr. Gale was in charge of the investigation and he made the judgment on discipline for Mr. Shuman. (Ex. D, pages 49-71 (detailing the investigation and conclusion on discipline)). Joshua Shuman testified that the only reason he sued Mr. Gale was,

"Because he was in charge of my discipline." (Ex. B, page 196, lines 23-25, page 197, lines 1-2).

50. The Board has full power to manage the schools and adopt all rules needed for that broad purpose. 24 P.S. § 5-510.

51. There is no identified Board policy, practice or custom with respect to the First Amendment claims in the Plaintiffs' Complaint.

52. There is no evidence to support the conclusion that the Board delegated final policymaking authority to any of the Defendants or that the Board endorsed any purported First Amendment violations.

53. There in no express policy or custom of the District and/or the Board addressing student seizures nor is there any evidence that the Board has endorsed such a policy.

54. There is no identified policy, practice or custom amounting to deprivation of student's Fourth Amendment right to be free from unreasonable seizure.

55. There is no identified District or Board policy, practice or custom amounting to deprivation of student's Fourteenth Amendment procedural due process right nor is there any evidence that the Board has endorsed such a policy.

56. There in no express policy of the District and/or the Board addressing student equal protection rights.

57. There is no identified policy, practice or custom amounting to deprivation of student's Fourteenth Amendment equal protection rights nor is there any evidence that the Board has endorsed such a policy.

**Conclusion**

      The Defendants respectfully request judgment in their favor and against Plaintiffs on all claims.

                                      Respectfully submitted:
                                      **SWEET, STEVENS, TUCKER & KATZ LLP**

Date: December 15, 2003        By:     /s/ Jason R. Wiley
                                            **Ellis H. Katz, Esquire**, Atty I.D. #34835
                                            **Jason R. Wiley, Esquire**, Atty I.D. #79478
                                            331 Butler Avenue, P.O. Box 5069
                                            New Britain, Pennsylvania 18901
                                            Telephone: 215-345-9111
                                            Facsimile: 215-348-1147

                                            Attorneys for Defendants,
                                            Penn Manor School District, Penn Manor School Board, Gary B. Campbell, Donald Stewart, Janice M. Mindish, Brian D. Baddick, Philip Gale, and Carole Fay