## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA SHUMAN,** a minor by and through his mother and natural guardian **TERESA SHERTZER, and TERESA SHERTZER,** individually | : : : : : | **CIVIL ACTION NO. 02-CV-3594** |
| **Plaintiffs,** | : : | |
| **v.** | : : : | **(GARDNER)** |
| **PENN MANOR SCHOOL DISTRICT, PENN MANOR SCHOOL BOARD, GARY B. CAMPBELL,** individually and as Superintendent of the Penn Manor School District, **AND** **DONALD STEWART,** individually and as Acting Superintendent of the Penn Manor School District **AND** **JANICE M. MINDISH,** individually and as Principal of Penn Manor High School, **AND** **BRIAN D. BADDICK,** individually and as Assistant Principal of Penn Manor High School, **AND** **PHILIP B. GALE,** individually and as Dean of Students of Penn Manor High School, **AND** **CAROLE FAY,** individually and as a teacher and Agriculture Coordinator at Penn Manor High School | : : : : : : : : : : : : : : : : : : : : : : : : : : | |
| **Defendants.** | : | |

### DEFENDANTS, PENN MANOR SCHOOL DISTRICT, PENN MANOR SCHOOL BOARD, GARY B. CAMPBELL, DONALD STEWART, JANICE M. MINDISH, BRIAN D. BADDICK, PHILIP GALE, AND CAROLE FAY'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The Defendants, Penn Manor School District (hereinafter referred to as the "District"),

Penn Manor School Board (hereinafter referred to as the "Board"), Donald Stewart,

Superintendent of the Penn Manor School District, Janice M. Mindish, Principal of Penn Manor

High School, Brian D. Baddick, Assistant Principal of Penn Manor High School, Philip Gale,

Assistant Principal of Penn Manor High School, and Carole Fay, teacher and Agriculture Coordinator at Penn Manor High School,[1] present the following Reply Brief in support of their Motion for Summary Judgment:

## I.     Introduction

This case arises from an incident that occurred on December 7, 2001 between the minor Plaintiff, Joshua Shuman, and another student, Olivia Becker.  (Ex. A, paragraphs 14-16; see also, Ex. B, pages 47-62).[2]  Ms. Becker reported to her guidance counselor that Joshua Shuman engaged in inappropriate sexual contact against her will during second and third block classes on December 7.  (See, Ex. C, page 46, lines 13-25).  Following an investigation, conducted by Assistant High School Principal, Philip Gale, Mr. Shuman was suspended from school for 4 days, from December 11, 2001 through December 14, 2001.  (Ex. A, paragraph 24; Ex. B, pages 96, 100).

As a result of his 4 day suspension, Plaintiff, Joshua Shuman and his mother, Theresa Shertzer, sued the District and its Board of School Directors, each individual Board Member, four administrators, and a teacher, asserting violations of the First, Fourth and Fourteenth Amendments, as well as state law claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.  (See, Ex. A).

On December 15, 2003, the Defendants filed a Motion for Summary Judgment and Brief in support thereof, seeking dismissal of all remaining claims.  The Plaintiffs filed a response on

---

[1]     C. Willis Herr, Richard L. Frerichs, Jeffrey E. Lyon, Patrick T. Kline, Donald H. Anderson, H. Thomas Herr, Kelly K. Withum, Donna Wert, Jeffrey G. Kreider, Dolores Warfel, and Steve Skrocki, were each individually named defendants in Plaintiffs' Complaint.  By Stipulation of the parties dated November 3, 2003 and Court Order dated November 6, 2003, these defendants were voluntarily dismissed from this case.  Also, Plaintiffs have conceded, in their Brief in Opposition to Defendants' Motion for Summary Judgment at page 33 fn. 2, that they have no viable claims against Dr. Gary Campbell.

[2]     The Exhibits referred to in this Reply Brief are attached to Defendants' Brief in Support of their Motion for Summary Judgment.

January 9, 2004.  The Defendants, by Motion filed in conjunction herewith, seek leave of Court to present the following reply brief in support of their Motion for Summary Judgment.

## II.    Argument

### A.    Standard of Review

With respect to several of Plaintiffs' claims, there are no disputed issues of material fact. When there are no disputed material facts, and the material facts fail to support Plaintiffs' claim, the parties agree that the moving party is entitled to judgment as a matter of law.

Additionally, however, the moving party is also entitled to summary judgment if there is a lack of evidence to support a claim.  In such a situation, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  See also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  In considering the existence of a viable claim, the Court need not accept mere conclusory allegations or assertions taken from the pleadings.  See Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

### B.    First Amendment

Plaintiffs state that their First Amendment claim "concerns the fact that Plaintiffs were not provided access to the information they are entitled to receive."  (Plaintiffs' Brief, p. 26). Specifically, they indicate, "Plaintiffs were entitled to receive information regarding the

investigation of Ms. Becker's complaint, as well as the details of what she claimed he did to her." (Id.). [3]

The United States Supreme Court, in <u>Board of Education, Island Trees Union Free School District v. Pico</u>, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982), recognized a First Amendment right to receive information and ideas. The Court stated that the First Amendment affords the public access to discussion, debate, and the dissemination of information and ideas. <u>Id.</u>, 457 U.S. at 866 (citations omitted). The First Amendment right to receive information and ideas is corollary of the rights of free speech and press. <u>Id.</u>, 457 U.S. at 867.

Relying upon this precedent, the Third Circuit has held that in analyzing a First Amendment right of access claim, the Court must first consider whether a the information sought has a "tradition of accessibility" arising from "judgment of experience." <u>Capital Cities Media, Inc. v. Chester</u>, 797 F.2d 1164, 1174 (3d Cir. 1986) (citations omitted). Specifically, the Court must conclude, "the place and process has historically been open to the press and general public." Second, courts are to consider whether public access plays a significant positive role in the functioning of the particular process in question. <u>Id.</u>. <u>See also</u>, <u>Press-Enterprise Co. v. Superior Court of California, Riverside County</u>, 464 U.S. 501, 518, 104 S.Ct. 819, 828 (1984) (STEVENS, J., concurring) ("a claim to access cannot succeed unless access makes a positive contribution to the process of self-governance").

_____

[3]     In ruling upon the Defendants Motion to Dismiss, the Court has already stated that the Plaintiffs' First Amendment claims are more akin to procedural due process claims. (Ex. J, page 20, lines 24-25). Specifically, procedural due process requires that the accused be provided "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." <u>Goss v. Lopez</u>, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). <u>See also</u>, <u>S.G. v. Sayreville Board of Education</u>, 333 F.3d 417, 424 (3d Cir. 2003). As set forth in Defendants' Brief in Support of their Motion for Summary Judgment, Argument Section "B-3", Joshua Shuman admitted he was provided notice of the charges against him and a full opportunity to respond. (See, Defendants Brief in Support of their Motion for Summary Judgment, Argument Section "B-3", <u>citing</u>, Ex. B, page 75, lines 18-22; page 77, lines 22-25; page 78, lines 1-5; page 81, lines 17-20; page 112, lines 12-16).

Assuming a tradition of press and public accessibility to the information sought, and assuming that public access to the information sought serves the public interest of self-governance, violation of the First Amendment right to receive information and ideas still depends upon the motivation behind the governmental entity's actions. Pico., 457 U.S. at 871. In this case, Plaintiffs must establish that the School District intended to deny the Plaintiffs access to information and ideas with which the School District disagreed, and this intent was the decisive factor in the School District's decision. Id.

Therefore, as set forth in Capital Cities Media Press-Enterprise and Pico, it is the Plaintiffs burden to establish by a preponderance of the evidence that the information sought enjoys a "tradition of accessibility", that public access to the information would make a positive contribution to the process of self-governance, and the District intended to deny the Plaintiffs access to information and ideas because of the District's disagreement with the content of the information. Further, this intent must be proven to be the decisive factor in the District's decision.

First, the facts in this case do not support Plaintiffs' contention that they were denied access to the charges and details of the investigation. To the contrary, Joshua Shuman, admits to being fully advised of the charges levied against him by Olivia Becker, (See, Defendants Brief in Support of their Motion for Summary Judgment, Argument Section "B-3", citing, Ex. B, page 75, lines 18-22; page 77, lines 22-25; page 78, lines 1-5; page 81, lines 17-20; page 112, lines 12-16).

Second, Plaintiffs have failed to establish that the information sought, analyzed through the "judgment of experience" enjoys a tradition of accessibility to the press and public. Plaintiffs cite case law, nor has Defendants counsel discovered any, which supports the proposition that a

school district's student disciplinary investigation record is information that enjoys a tradition of accessibility to the press and public.  To the contrary, student discipline records are protected from disclosure to the press and public be state and federal law.  <u>See</u>, the Family Education Rights Privacy Act, 20 U.S.C. § 1232g, and the Pennsylvania Administrative Code, Guidelines for the Collection, Maintenance and Dissemination of Pupil Records, 22 Pa.Code § 12.33.  Thus, while Plaintiffs have an individual interest in the investigation records, they have not established that the District's discipline records are traditionally areas of press and public accessibility worthy of compelled public disclosure under the First Amendment.

Third, Plaintiffs have presented no evidence that the District intended to withhold information form Plaintiffs based upon the District's disagreement with the content of the information.  Rather, Plaintiffs recognize that the specific document, which they sought between December 10, 2001 and January 16, 2002, had not been prepared by Mr. Gale until January 30, 2002.  (Plaintiffs Brief, pp. 31-32, <u>citing</u>, Ex. G to Plaintiffs' Brief, pp. 107-108).  Thus, the document was not provided because it did not exist at the time it was requested.  (<u>Id.</u>).  There can be no unconstitutional motivation for failing to provide a document that did not exist.  Plaintiffs admit that the document was ultimately provided to Plaintiffs after it was prepared.  (Plaintiffs' Brief, p. 18)

Finally, Plaintiffs have presented no evidence that the information sought was withheld because the District disagreed with the content.  To the contrary, the content of the investigatory report supports the Defendants' investigation, addresses the conflict between Ms. Becker and Mr. Shuman's version of the events, and reports that there was no witnesses who could verify whether the touching was consensual or non-consensual.  The First Amendment right to information and ideas, is designed to prevent governmental entities from precluding the release

of ideas or information with which it disagrees.  Pico., 457 U.S. at 871.  It is illogical for the Plaintiffs to contend, therefore, that the Defendants have violated the First Amendment by failing to release information which supports their investigation.

None of the cases cited by Plaintiffs support the application of the First Amendment to this case.  In Kleindienst v. Mandel, 408 U.S. 753, 770, 92 S.Ct. 2576, 2585 (1972), the Supreme Court refused to determine whether the First Amendment protected an alien, who intended to speak at a public symposium in the United States, from being excluded from entry into the country by the exercise of executive discretion.  The Supreme Court wrote,

> We hold that when the Executive exercises this power [of excluding an alien] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant. What First Amendment or other grounds may be available for attacking exercise of discretion for which no justification whatsoever is advanced is a question we neither address or decide in this case.

Id.

In Press-Enterprise Co. v. Superior Court of California, Riverside County, 464 U.S. 501, 104 S.Ct. 819 (1984), the Supreme Court ruled that criminal trials are open to the public.  In a concurring decision, Justice Stevens discussed the applicability of the First Amendment to the right of public access to criminal proceedings.  "The common core purpose of assuring freedom of communication on matters relating to the functioning of government that underlies the decision of cases of this kind provides protection to all members of the public from abridgment of their rights of access to information about the operation of their government, including the Judicial Branch."  464 U.S. at 517, 104 S.Ct. at 827-828 (Justice STEVENS, concurring) (citations omitted).

In <u>Capital Cities Media, Inc. v. Chester</u>, 797 F.2d 1164, 1175 -1176 (3d Cir. 1986), the Third Circuit denied a newspaper's request for access to government files regarding environmental protection "[b]ecause Times Leader has neither pleaded nor offered to prove the existence of a tradition of public access to the type of administrative records here in dispute, it cannot show that access in this situation enjoys the 'favorable judgment of experience.'  As Times Leader cannot satisfy 'both tests of experience and logic,' a qualified First Amendment right of public access [does not] attach." <u>Id.</u> (citations omitted).

For the reasons set forth herein, and in their Brief in Support of their Motion for Summary Judgment, the Defendants respectfully request judgment as a matter of law on the Plaintiffs' First Amendment claims.

## 1.    Municipal Liability

Even if Plaintiffs have a viable First Amendment claim, that claim cannot stand against the District without sufficient evidence of District policy, practice or custom.  The District has set forth its defense of municipal immunity in its Brief in Support of its Motion for Summary Judgment.

However, Plaintiffs have raised a new claim against the District in their Brief in Opposition to the Defendants' Motion for Summary Judgment.  Plaintiffs aver that the District failed to provide proper training in the area of "turn[ing] over investigation reports and information to a suspended student and parents." (Plaintiffs' Brief, p. 31).  Nowhere in the Complaint do Plaintiffs assert a failure to train claim in support of their allegations of District liability.  For this reason alone, the claim should be dismissed.

Furthermore, even if Plaintiffs had properly raised a failure to train claim in their Complaint, the claim fails as a matter of law.  A Section 1983 claim may be premised on a

municipality's failure to train. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989), <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997). In order for a plaintiff to succeed on a failure to train argument under Section 1983, the plaintiff must establish that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 356-357 (3d Cir. 1999), <u>quoting</u>, <u>City of Canton</u>, 489 U.S. at 388; <u>Reitz</u>, 125 F.3d at 145. Indeed, the failure to train alleged by plaintiff must be shown to have reflected a "deliberate" or "conscious" choice by the municipality. <u>City of Canton</u>, 489 U.S. at 389. Furthermore,

> [T]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

<u>Bd. of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997). "When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee." <u>Reitz</u>, 125 F.3d at 145, <u>citing</u> <u>Brown</u>, 520 U.S. at 404.

In this case, Plaintiffs have presented no evidence that the purported failure to release information to the Plaintiffs resulted from the District's deliberately or consciously indifferent failure to train its employees. Further, there is no evidence that the District is the "moving force" behind the injury alleged.[4] Therefore, the District respectfully requests judgment as a matter of law on Plaintiffs' First Amendment claim.

---

[4]    Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial <u>Celotex</u> burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." <u>Id.</u> at 325. In considering the existence of a viable claim, the Court need not accept mere conclusory allegations or assertions taken from the pleadings. <u>See</u> <u>Schoch</u>, 912 F.2d at 657.

### 2. Individual Liability

Even if Plaintiffs have asserted a viable First Amendment claim, the individual defendants, as indicated in the Defendants' Brief in Support of their Motion for Summary Judgment, and herein, are entitled to qualified immunity. Both parties agree that qualified immunity is available to each individual defendant if the defendant did not violate clearly established laws, or a reasonable public official in the individual defendant's position reasonably could have believed that his or her conduct was permissible. In responding to the individual defendants' assertion that they are entitled to qualified immunity, Plaintiffs make the overbroad assertion that "First Amendment rights are available to students, including the right to receive and have access to information." (Plaintiffs' Brief, p. 34, citing, Pico). In Pico, the Supreme Court concluded that at school district could not remove books, which the school found objectionable, from its library. In this case, the Plaintiffs are asking that the First Amendment right to receive information be extended to an individual plaintiff's request for disciplinary and investigatory records. Counsel for the Defendants have found no case which applies the First Amendment in a similar context. The Defendants request that the Court conclude as a matter of law that the First Amendment rights which Plaintiffs claim were violated are not clearly established. Therefore, the First Amendment claims against the individual defendants should be dismissed.

### C.    Fourth Amendment

The Defendants rely upon their Brief in Support of their Motion for Summary Judgment on the Plaintiffs' Fourth Amendment claim.

### 1.    Municipal Liability

Even if the Plaintiffs established a viable Fourth Amendment claim, the claim against the District should be dismissed on the basis of municipal immunity.  Plaintiffs admit that there is no District policy concerning investigation of disciplinary actions and interrogation of students. (Plaintiffs' Brief, p. 41).  Plaintiffs avers that the administrators "do not receive proper training as to what is constitutionally permissible for detaining a student at school and for interrogating a student." (Id.).

Again, similar to their First Amendment claim against the District, Plaintiffs assert a failure to train claim that does not appear in the Complaint.  For this reason alone, the claim should be dismissed.

Nevertheless, the failure to train claim fails because the Plaintiffs have presented no evidence that the District made a "deliberate" or "conscious" choice not to train its employees with respect to the Fourth Amendment.  City of Canton, 489 U.S. at 389.  Plaintiffs have presented no evidence of a deliberate or conscious choice by the school district not to train its employees.  To the contrary, the evidence submitted by the Defendants establishes that the District employees were trained in the area of student discipline.  (See, Ex. E, pp. 34-36, detailing District training relating to student discipline; and see, Ex. F, pp. 23-24, detailing Mr. Baddick's training in the area of student discipline).  The District therefore, respectfully requests judgment as a matter of law on Plaintiffs' Fourth Amendment claim.

### 2.    Individual Liability

Even if the Plaintiffs established a viable Fourth Amendment claim, the individual defendants are entitled to qualified immunity.  Plaintiffs contend that, at the time of Mr.

Shuman's discipline, "[I]t was clearly established that the Fourth Amendment protection against unreasonable searches *and* seizures extends to students in public school." (Plaintiffs Brief, p. 42, citing, Vernonia School District v. Acton, 515 U.S. at 655 (applying a reasonableness standard to a school district search). Plaintiffs' assertion is legally incorrect and it overstates the Fourth Amendment question at issue in this case.

First, there is no case in the Third Circuit or U.S. Supreme Court that annunciates the standard to be applied to determine the reasonableness of a seizure in a school context. See Valentino C. v. S.D. of Philadelphia, et al. 2003 WL 177210 *4 (E.D.Pa., Jan. 23, 2003) (noting the lack of Third Circuit precedent and applying the "reasonableness" standard to a public school seizure claim as opposed to a search claim). In the criminal context, it is well established that there is a reduced standard of reasonableness applied to a seizure, as opposed to a search, because a search involves a more significant constitutional intrusion. See Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Given the lack of precedent concerning the standard to be applied in determining the constitutionality of a school official's investigatory seizure of a student, the individual defendants in this case did not violate a clearly established constitutional right of which a reasonable person would have known and respectfully request judgment as a matter of law.

Second, the Plaintiffs have overstated the Fourth Amendment issue involved in this case. The Fourth Amendment issue involved in this case is when a school official's seizure of a student, which is justified at its inception, becomes a violation of the Fourth Amendment.[5] The only other case dealing with the same issue is a case out of the Tenth Circuit, in which no Fourth Amendment violation was found. Edwards v. Rees, 883 F.2d 882 (10th Cir. 1989). Therefore, again, given the lack of precedent concerning when a school district seizure, justified at its

inception, becomes unreasonable, the individual defendants in this case did not violate a clearly established constitutional right of which a reasonable person would have known and respectfully request judgment as a matter of law.

### D.     Fourteenth Amendment – Procedural Due Process

Procedural due process requires that the accused be provided "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Goss v. Lopez, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).  See also, S.G. v. Sayreville Board of Education, 333 F.3d 417, 424 (3d Cir. 2003).  As set forth Defendants Brief in Support of their Motion for Summary Judgment, Argument Section "B-3", Joshua Shuman admitted in his testimony that he was provided notice of the charges against him and a full opportunity to present his side of the story. (See, Defendants Brief in Support of their Motion for Summary Judgment, Argument Section "B-3", citing, Ex. B, page 75, lines 18-22; page 77, lines 22-25; page 78, lines 1-5; page 81, lines 17-20; page 112, lines 12-16).  Plaintiffs admit that "Joshua was given an opportunity to present his side of the story." (Plaintiffs' Brief, p. 45).  However, they contend, "[H]e was not given full notice of the charges against him, nor was he given an explanation of the evidence the school had." (Id.).

Plaintiffs assertions are not supported by the evidence.  Mr. Shuman testified that he knew why he was being called to the office, Mr. Gale asked him to relay the events of December 7, 2001 and Mr. Gale advised him, "[Olivia Becker] was claiming that I physically forced my hand upon her, and that she was very upset about it." (Ex. B, page 75, lines 18-22; page 77, lines 22-25; page 78, lines 1-5; page 81, lines 17-20).  Further, he was asked, "[Y]ou knew that it was Olivia Becker claiming that you had forced yourself in some fashion upon her?" (Ex. B, page

---

[5]     Plaintiffs concede that the seizure was justified at its inception.  (See, Plaintiffs' Brief, p. 39),

112, lines 12-16).  To which Mr. Shuman responded, "Yes."  (Ex. B., pages 112, line 16).

Joshua Shuman, in fact, agreed that the conduct had occurred, but asserted that it was

consensual.  Mr. Shuman was then presented with Ms. Becker's version of the events and her

statement that it had not been consensual.

As recognized by the United States Supreme Court in <u>Goss</u>, the informal "give-and-take"

during the investigation of wrongdoing, which transpired between Mr. Shuman and Mr. Gale, is

how procedural due process is generally provided in the context of a suspension form school.

<u>Goss</u> 419 U.S. at 582-584.  As long as the student "at least ha[s] the opportunity to characterize

his conduct and put it in what he deems the proper context" due process is satisfied.  <u>Id.</u> at 584.

Mr. Shuman admits that he had a full and fair opportunity to present his version of the events of

December 7, 2001.  Because Mr. Shuman was provided adequate procedural due process,

according to the Supreme Court's standard set forth in <u>Goss</u>, the Defendants respectfully request

judgment as a matter of law on the Fourteenth Amendment Procedural Due Process claim.

Plaintiffs continue to support their Fourteenth Amendment procedural due process claim

with reference to the Pennsylvania Administrative Code and Penn Manor School District Policy.

(Plaintiffs' Brief, pp. 47-48).  Plaintiffs assert that state law is relevant to procedural due process

claims.  (Plaintiffs' Brief, p. 45).  It is well established that the constitutional requirements of a

procedural due process claim are supplied and defined by federal law, not be state law or

regulations.  <u>See</u> <u>Patterson v. Armstrong County Children and Youth Services</u>, 141 F.Supp.2d

512, 537 (W.D. Pa. 2001) (the minimum, constitutionally mandated requirements of due process

in a given context and case are supplied and defined by federal law, not by state law or

regulations), <u>citing</u> <u>Davis v. Scherer</u>, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

<u>Cf</u> <u>Pennhurst v. Halderman</u>, 465 U.S. 89, 106, 104 S.Ct. 900 (1984) ("it is difficult to think of a

greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

Moreover, even if the Plaintiffs were able to prove that the District violated the Pennsylvania Code, the Pennsylvania Code establishes no private cause of action.  See Whipple v. Warren County School District, 133 F.Supp.2d 381, 383 (W.D. Pa. 2000)(refusing to find an independent cause of action under the Pennsylvania Code where the plaintiff did not cite, nor did the court find, a particular provision of the state regulations which would permit a private cause of action).

Because Mr. Shuman was provided adequate procedural due process as defined by federal law in the Supreme Court's decision in Goss, the Defendants respectfully request judgment as a matter of law on the Fourteenth Amendment Procedural Due Process claim.

### 1.    Municipal Liability

Even if Plaintiffs have a viable Fourteenth Amendment procedural due process claim, that claim cannot stand against the District without sufficient evidence of District policy, practice or custom.  The District has set forth its defense of municipal immunity in its Brief in Support of its Motion for Summary Judgment.

Again, however, Plaintiffs have raised a new claim against the District in their Brief in Opposition to the Defendants' Motion for Summary Judgment.  Plaintiffs aver that the District failed to provide proper training "as to what process is due to a student facing a suspension of more than three days." (Plaintiffs' Brief, p. 49).  Nowhere in the Complaint do Plaintiffs assert a failure to train claim in support of their allegations of District liability.  For this reason alone, the claim should be dismissed.

Furthermore, even if Plaintiffs had properly raised a failure to train claim in their Complaint, the claim fails as a matter of law. The Plaintiffs must establish that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter, 181 F.3d 339, 356-357 (3d Cir. 1999), quoting, City of Canton, 489 U.S. at 388; Reitz, 125 F.3d at 145. Indeed, the failure to train alleged by plaintiff must be shown to have reflected a "deliberate" or "conscious" choice by the municipality. City of Canton, 489 U.S. at 389.

In this case, Plaintiffs have presented no evidence that the purported failure to provide Mr. Shuman with procedural due process resulted from the District's deliberately or consciously indifferent failure to train its employees. Further, there is no evidence that the District is the "moving force" behind the injury alleged. The District therefore, respectfully requests judgment as a matter of law on Plaintiffs' Fourteenth Amendment procedural due process claim.

### 2. Individual Liability

Plaintiffs raise no new issues or claims in response to the individual defendants' contention that they are entitled to qualified immunity for Plaintiffs' Fourteenth Amendment Procedural Due Process claims. Therefore, the Defendants rely upon the arguments set forth in their Brief in Support of their Motion for Summary Judgment.

### E. <u>Fourteenth Amendment – Equal Protection</u>

For the first time, in their Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs have characterized their Fourteenth Amendment equal protection claim as a gender discrimination claim. (Plaintiffs' Brief, p. 54). Specifically, Plaintiffs write, "Although Plaintiffs agree that education is not a fundamental right, but (sic) the classification in this case involves gender." (Id.).

The Third Circuit has repeatedly held that to prove sexual discrimination in an equal protection case, a plaintiff must show that any disparate treatment was based upon gender. Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992), citing Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990) (additional citations omitted).   The Plaintiffs must present evidence for a reasonable jury to conclude that Plaintiff, Joshua Shuman, was treated differently from other individuals similarly situated *based upon his gender*.    Id. (emphasis added).  See also, Hynson v. the City of Chester, Legal Department, 864 F.2d 1026 (3d Cir. 1988) (to establish a gender discrimination claim under the equal protection clause, plaintiff must proffer sufficient evidence to prove that discrimination on the basis of gender was the purpose or "motivating factor" in the purported mistreatment);  Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (same); Bradley v. the United States, 299 F.3d 197 (3d Cir. 2002) (plaintiff is required to prove that the actions of the government officials "were motivated by a discriminatory purpose").

There is a complete lack of any evidence that Joshua Shuman's gender was the purpose or motivating factor in the Defendants decision to suspend him.  Plaintiffs have the burden of establishing discrimination on the basis of gender in support of their equal protection claim.  As set forth in Argument Section A, above, where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Celotex. at 325.  In considering the existence of a viable claim, the Court need not accept mere conclusory allegations or assertions taken from the pleadings. Schoch, 912 F.2d at 657. Therefore, the Defendants respectfully request judgment as a matter of law on the plaintiffs gender discrimination equal protection claim.

1.    **Municipal Liability**

Even if Plaintiffs have a viable Fourteenth Amendment equal protection claim, that claim cannot stand against the District without sufficient evidence of District policy, practice or custom. The District has set forth its defense of municipal immunity in its Brief in Support of its Motion for Summary Judgment.

Again, however, Plaintiffs have raised a new claim against the District in their Brief in Opposition to the Defendants' Motion for Summary Judgment. Plaintiffs aver that the District failed to provide proper training of its employees "as to the requirements under the Equal Protection Clause." (Plaintiffs' Brief, p. 56). Nowhere in the Complaint do Plaintiffs assert a failure to train claim in support of their allegations of District liability. For this reason alone, the claim should be dismissed.

Furthermore, even if Plaintiffs had properly raised a failure to train claim in their Complaint, the claim fails as a matter of law. As set forth above, in order for a plaintiff to succeed on a failure to train argument under Section 1983, the plaintiff must establish the failure to train reflected a "deliberate" or "conscious" choice by the municipality. City of Canton, 489 U.S. at 389. Furthermore, the Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. Bd. of County Commissioners of Bryan County v. Brown, 520 U.S. at 404.

In this case, Plaintiffs have presented no evidence that the purported gender discrimination against Mr. Shuman resulted from the District's deliberately or consciously indifferent failure to train its employees. Further, the re is no evidence that the District is the "moving force" behind the injury alleged. The District therefore, respectfully requests judgment as a matter of law on Plaintiffs' Fourteenth Amendment equal protection claim.

### 2.    Individual Liability

The Defendants rely upon the arguments set forth in their Brief in Support of their Motion for Summary Judgment in support of their defense of qualified immunity to Plaintiffs' equal protection claim.  Taken in the context of Plaintiffs' assertion that Mr. Shuman was discriminated against on the basis of his gender, the issue becomes whether a reasonable official in the defendant's respective positions, would have know that his or her conduct violated clearly established law.  For the reasons set forth herein, and in their Brief in Support of their Motion for Summary Judgment, the individually identified defendants seek judgment as a matter of law on Plaintiffs' equal protection claims.

### F.    <u>State Law Claims</u> [6]

### 1.    Intentional Infliction of Emotional Distress

In addition to the argument contained in their Motion for Summary Judgment on Plaintiffs' claim for intentional infliction of emotional distress, the claim also must be dismissed for the failure to present any expert medical evidence.

Under Pennsylvania law, expert medical evidence must be presented before a plaintiff can recover for intentional infliction of emotional distress.  See <u>Williams v. Guzzardi</u>, 875 F.2d 46, 51-52 (3d Cir.1989) (also discussing existence of the tort in Pennsylvania); <u>Bolden v. Southeastern Pennsylvania Transp. Authority</u>, 21 F.3d 29, 35 (3d Cir. 1994); <u>Kazatsky v. King David Memorial Park, Inc.</u>, 515 Pa. 183, 527 A.2d 988 (1987).  Pennsylvania has adopted section 46 of the Restatement (Second) of Torts.  <u>Bolden</u>, 21 F.3d at 35.  "The species of tort

---

[6]    If the Court dismisses Plaintiffs' federal claims, it has discretion to exercise supplemental jurisdiction over Plaintiffs' state law claims.  <u>See</u>, 28 U.S.C. § 1367.  However, the U.S. Supreme Court in <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), has indicated that "if federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  <u>See also</u>, <u>Aldinger v. Howard</u>, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); <u>Sambrick v. Borough of Norristown</u>, 639 F.Supp. 1351, 1356 (E.D. Pa. 1986); <u>Lupuszanski v. Fabey</u>, 560 F.Supp. 3, 5 (E.D.Pa. 1982); <u>Lynch v. Taylor</u>, CIV. A. No. 88-9073, 1989 WL 89024, *3 (E.D.Pa., Aug. 4, 1989).

created by section 46 [of the Restatement (Second) of Torts, defining intentional infliction of emotional distress] provides only the most nebulous definition of "outrageous" conduct. This in turn renders the cause of action one which tends to defy principled adjudication." Id. "It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress." Id.

Plaintiffs have failed to present the Court with expert medical confirmation that plaintiffs actually suffered the claimed distress. Therefore, in addition to the argument contained in their Motion for Summary Judgment on Plaintiffs' claim for intentional infliction of emotional distress, the claim also must be dismissed for the failure to present any expert medical evidence.

## 2. Negligence

Plaintiffs agree that all of the Defendants are protected from liability for negligent acts by the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8550. This immunity does not apply to protect municipal employees from liability for intention torts. In other counts of the Complaint, Plaintiffs have not alleged an intentional tort, as they do in Count VIII, therefore the claim should be dismissed as a matter of law.

## III. Conclusion

The Defendants respectfully request judgment in their favor and against Plaintiffs on all claims.

Respectfully submitted:

SWEET, STEVENS, TUCKER & KATZ LLP

Date: <u>January 19, 2004</u>          By: <u>  /s/ Jason R. Wiley            </u>
                                        Ellis H. Katz, Esquire, Atty I.D. #34835
                                        Jason R. Wiley, Esquire, Atty I.D. #79478
                                        331 Butler Avenue, P.O. Box  5069
                                        New Britain, Pennsylvania  18901
                                        Telephone:  215-345-9111
                                        Facsimile:  215-348-1147

                                        Attorneys for Defendants,
                                        Penn Manor School District, Penn Manor School
                                        Board, Gary B. Campbell, Donald Stewart, Janice
                                        M. Mindish, Brian D. Baddick, Philip Gale, and
                                        Carole Fay.